**IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA FORT PIERCE DIVISION**

SCULLY ROYALTY LTD.,

Plaintiff,

v.

Case No.: 2:26-cv-14257-AMC

IAT REINSURANCE CO. LTD., IAT INSURANCE GROUP, INC., PETER KELLOGG, CHARLES KELLOGG, GOOSE CREEK CAPITAL, INC., HARCO NATIONAL INSURANCE COMPANY, MILFAM LLC, NEIL SUBIN, SKYLER WICHERS, ALAN HOWE & MARK HOLLIDAY,

Defendants.
_____________________________________________/

**MOTION TO DISMISS**

Defendants MILFAM LLC, Neil Subin, Skyler Wichers, Alan Howe, and Mark Holliday (together, the "MILFAM Defendants"), IAT Reinsurance Co. Ltd., IAT Insurance Group, Inc., Peter Kellogg, Charles Kellogg, Goose Creek Capital, Inc., HARCO National Insurance Company (together, the "Kellogg Defendants" and, collectively with the MILFAM Defendants, "Defendants"), by and through their respective undersigned counsel, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), respectfully move this Court to dismiss, in its entirety, the First Amended Complaint for Violations of Section 13(d), Tortious Interference, and Civil Conspiracy (the "Amended Complaint") [D.E. 19] filed by Plaintiff Scully Royalty Ltd. ("Plaintiff," "Scully," or the "Company"). Defendants also move under Rule 12(f) to strike irrelevant and inappropriate allegations in the Amended Complaint. In support thereof, Defendants state as follows:

## INTRODUCTION

Scully invokes Section 13(d) as a disclosure claim, but the relief it seeks would improperly restrict the voting rights of substantial shareholders whose amended filings provide all the information that the statute requires. Although Scully presents this lawsuit as an effort to protect its shareholders, its real aim is to insulate Scully's entrenched board of directors from its shareholders. Scully is listed on the New York Stock Exchange, yet a single person, Michael J. Smith, serves as its Executive Chairman, Interim Chief Executive Officer, and Chief Financial Officer. *See* Am. Compl. at ¶ 35. Scully appears to have no other officers. That concentration of authority gives Smith effectively unchecked control over Scully and its expenditure of corporate funds. Smith is now using that control to spend money that belongs to Scully and its shareholders on litigation that has no legal or factual footing and whose only real purpose is to entrench Smith in his lucrative position, despite the will of Scully's shareholders.

The MILFAM Defendants and Kellogg Defendants, or entities associated with them, hold substantial ownership interests in Scully—approximately 48.5%. *Id.* ¶ 10. But over the past year, Scully has resisted at every turn, and through every means available, their efforts merely to exercise their rights as shareholders to vote on the composition of the Company's board. The Company's years-long effort to preserve management's control has always been driven by Smith. When shareholders moved to replace the board at Scully's scheduled annual meeting in late 2025, the board purported to postpone the annual meeting of shareholders (after the Defendants' representatives had already traveled to Hong Kong from the United States for the meeting) and then did not attend it. *Id.* at ¶¶ 17–18. The shareholders proceeded to hold the meeting without the board at the time and place noticed by the Company. *Id.* at ¶ 18. As Defendant Wichers later announced, nearly 59% of the outstanding shares of the Company voted in favor of the MILFAM

nominees. *Id.* at 24.[1]

Through Scully, Smith now asks this Court to bar the Company's largest shareholders from voting their shares until they amend their Schedule 13D filings to admit that they formed an undisclosed group in connection with that late-2025 effort to replace the board—an allegation they deny. *Id.* at 68–69 (Prayer for Relief). But Section 13(d) provides no such remedy. Section 13(d)(1) requires accurate disclosure of current or forward-looking plans; it does not authorize a court to compel shareholders to confess to disputed past conduct, nor does it authorize a court to impede shareholders from voting their shares where, as here, accurate disclosures of current intent have been made. The Amended Complaint should be dismissed in its entirety.

Specifically, Count I of the Amended Complaint concerning Defendants' purported violation of Section 13(d) of the Exchange Act—the sole claim providing federal jurisdiction—is moot. As noted, Section 13(d) requires disclosure of an investor's *current and future plans* regarding ownership and control, and the remedy for an allegedly deficient disclosure is an amended or updated one that sets forth whether shareholders are currently acting together and their intentions. Defendants have already provided that remedy. The relevant Defendants have filed amended Schedule 13Ds that disclose their present agreement to vote together, the existence of this lawsuit, a description of Scully's contention that they had formed a group in 2025, and their denial of that contention. *Id.* at ¶¶ 125–128.

Scully does not dispute that all these facts have been disclosed to shareholders and the

[1] In fact, at the meeting, a total of just over 66% of the Company's shares were voted; 58.8% of the total shares were voted for the MILFAM nominees, and just over 7% of the total shares were voted for the incumbent directors. Whether that vote was valid is a matter currently before a court in the Cayman Islands, where it belongs. *Id.* at ¶¶ 75, 79, 120. For present purposes, which concern only the information the operative Schedule 13D disclosures provide shareholders about current and future matters, the Court need not assess such items.

market. It presses on only because Defendants have not agreed with Plaintiff's view about alleged *past* coordination, which Defendants deny. But even taking Plaintiff's allegations as true, a dispute over whether Defendants violated Section 13(d) in the past does not present a live controversy. Section 13(d) offers no retrospective remedy for a filing Scully believes should have been made sooner. Because nothing remains to be disclosed, Count I should be dismissed for lack of subject-matter jurisdiction or, alternatively, for failure to state a claim (including for use of group pleading despite no well-pleaded allegations as to certain Defendants).

Without Count I, no federal law claim remains. Counts II through VII assert Florida common law tort claims that raise state law issues and belong in state court. Because this case remains at an early stage and no federal claim will proceed, the Court should decline to exercise supplemental jurisdiction and dismiss Counts II through VII without prejudice.

The Amended Complaint can, and should, be dismissed in full solely on these very straightforward bases. In the alternative, certain Defendants also submit that Count I should be dismissed as to them for absence of individualized allegations. Finally, the Court should strike the many clearly irrelevant references in the Amended Complaint to decade-old filings regarding an unrelated issuer, whose only apparent purpose is to invite an improper and utterly unsupported propensity inference.

## FACTUAL BACKGROUND

The Amended Complaint alleges seven (7) causes of action, six (6) of which concern state law claims. Count I is the only federal claim and is asserted against all Defendants; Counts II through VII are state law claims for tortious interference and civil conspiracy asserted against the MILFAM Defendants. Only the facts relevant to subject-matter jurisdiction are summarized below.

Scully is a publicly traded company. Peter Kellogg ("Kellogg") and MILFAM LLC ("MILFAM") are shareholders of Scully and, according to the Amended Complaint, own substantial blocks of Scully stock. Plaintiff's initial complaint alleged that in 2025, the Kellogg and MILFAM interests acted together to change the composition of Scully's board of directors and therefore were required to disclose that alleged group activity under Section 13(d). Plaintiff sought a declaration that Defendants had violated Section 13(d) and an injunction requiring Defendants to furnish additional disclosures before voting their shares at Scully's next shareholder meeting.

The Kellogg Defendants and MILFAM-related parties subsequently filed respective amended Schedule 13D disclosures stating that, as of the date of those filings, they had agreed to work together to elect MILFAM's proposed slate of directors at Scully's next annual or special meeting. The amended disclosures also acknowledged that this lawsuit had been filed, summarized the allegations by Scully including the Company's position that the Kellogg and MILFAM interests had previously formed a group, and stated that Defendants denied they had formed a group prior to filing the amended Schedule 13D.

Plaintiff then filed an amended complaint that retained its disclosure claim under Section 13(d) of the Securities Exchange Act. This claim provides the sole basis for federal jurisdiction. The remainder of Plaintiff's claims are state law causes of action.

## LEGAL STANDARD

### I. Motion to Dismiss Under 12(b)(1)/Mootness

Defendants seek to dismiss Count I as moot. A case is moot "'when it no longer presents a live controversy with respect to which the court can give meaningful relief.'" *See Hall v. Sec'y, Alabama*, 902 F.3d 1294, 1297 (11th Cir. 2018) (quoting *Al Najjar v. Ashcroft*, 273 F.3d 1330, 1336 (11th Cir. 2001)). "'If events that occur subsequent to the filing of a lawsuit or an appeal

deprive the court of the ability to give the plaintiff or appellant meaningful relief, then the case is moot and must be dismissed.'" *Id.* As a result, any decision on the merits of a moot case or issue would be an impermissible advisory opinion. *See Stevens v. Sch. Bd. of Broward Cnty.*, Fla., No. 24-61926-CIV, 2025 WL 887318, at *2 (S.D. Fla. Mar. 21, 2025) (citing *Troiano v. Supervisor of Elections in Palm Beach Cnty., Fla.*, 382 F.3d 1276, 1282 (11th Cir. 2004)); *Esquivel v. Citibank, N.A.*, No. 12-23423-CIV, 2013 WL 12121509, at *2–3 (S.D. Fla. Jan. 8, 2013).

## II. Motion to Dismiss Under Rule 12(b)(6)

To survive a motion to dismiss for failure to state a claim, a complaint must plead facts that make it plausible, not merely conceivable, that the defendant is liable. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Labels, conclusions, and a formulaic recitation of the elements do not suffice. *Twombly*, 550 U.S. at 555. Further, where a complaint names multiple defendants, it must allege facts ultimately showing what each named defendant did. *See Iqbal*, 556 U.S. at 676–77. A complaint that asserts claims against multiple defendants "without specifying which of the defendants are responsible for which acts or omissions" is an impermissible shotgun pleading. *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015); *see also Barmapov v. Amuial*, 986 F.3d 1321, 1324–25 (11th Cir. 2021); *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1294–95 (11th Cir. 2018).

## III. Motion to Strike Under Rule 12(f)

Rule 12(f) authorizes the Court to strike "any redundant, immaterial, impertinent, or scandalous matter" from a pleading. Fed. R. Civ. P. 12(f). Courts typically grant motions to strike when the challenged allegations have "no possible relation to the controversy" and may prejudice a party. *Augustus v. Bd. of Pub. Instruction of Escambia Cnty.*, 306 F.2d 862, 868 (5th Cir. 1962).

## ARGUMENT

### I. The Kellogg and MILFAM Interests' Amended Schedule 13D Disclosures Moot Plaintiff's Sole Federal Law Claim Under Section 13(d).

Plaintiff's Section 13(d) claim is moot because, as the Amended Complaint concedes, the amended Schedule 13D filings by the Kellogg and MILFAM interests have eliminated both any alleged informational deficiency that may have existed and the purported predicate for Scully's request for equitable relief.[2] The amended Schedule 13D filings provide the market with the information Section 13(d) requires, and Scully identifies no remaining disclosure-related injury that injunctive relief could redress. Count I of the Amended Complaint should therefore be dismissed with prejudice.

#### A. The Amended Schedule 13D Filings Cure Any Alleged Informational Deficiency, Rendering Count I Moot.

Section 13(d) is an informational provision. It requires a group of stockholders with beneficial ownership of more than five percent of an issuer's outstanding shares who act together to acquire, hold, vote, or dispose of those shares to file a Schedule 13D form disclosing their arrangement. *See Aim Immunotech, Inc. v. Tudor*, No. 23-13576, 2025 WL 974057, at *1 (11th Cir. Apr. 1, 2025). The statute's purpose is to ensure that investors and the marketplace receive notice when a significant block of an issuer's securities is being accumulated; it is not designed to adjudicate collateral disputes among the issuer, its management, and its shareholders. *See*

---

[2] Copies of the amended Schedule 13D filings by the MILFAM and Kellogg interests are attached hereto as **Exhibit A** and **Exhibit B**, respectively. Because the Amended Complaint extensively refers to and quotes from these documents, and because the documents are central to Plaintiff's claims and their authenticity is undisputed, the Court may appropriately consider them at the motion-to-dismiss stage under the incorporation-by-reference doctrine. *See Johnson v. Atlanta*, 107 F.4th 1292, 1300–03 (11th Cir. 2024). Moreover, in resolving a challenge to subject-matter jurisdiction under Rule 12(b)(1), the Court may consider materials outside the pleadings without converting the motion into one for summary judgment. *See Garcia v. Copenhaver, Bell & Assocs., M.D.'s, P.A.*, 104 F.3d 1256, 1261 (11th Cir. 1997).

*Hemispherx Biopharma, Inc. v. Johannesburg Consol. Invs.*, 553 F.3d 1351, 1364–65 (11th Cir. 2008). "The goal of section 13(d)(3) is to prevent persons who already have attained beneficial ownership of some amount of an issuer's securities from combining to control over five percent of a class of securities, yet ducking the reporting requirement in section 13(d)(1). That is what section 13(d)(3) is about. That is its purpose." *Id.* at 1364.

Here, the allegation in the Amended Complaint that the Kellogg and MILFAM interests disclosed that they are currently working as a group to elect the new directors ends this matter. *See* Am. Compl. at ¶¶ 32–33. That is because once the required information has been disclosed, Section 13(d)'s informational purpose has been fulfilled. As the Second Circuit recently explained, Section 13(d) is satisfied "when the shareholders receive the information required to be filed," and after the required disclosure has been made, there is no continuing injury and no basis for further relief. *See Nano Dimension Ltd. v. Murchinson Ltd.*, 102 F.4th 136, 141–42 (2d Cir. 2024) (citation omitted) (finding that claims seeking order directing disclosure and injunctive relief were rendered moot by the investors amending their Schedule 13D filings and stating allegations therein were without merit).

Other courts have likewise held that amended Schedule 13D filings supplying the allegedly omitted information eliminate the basis for further disclosure-related or equitable relief. *See Forte Biosciences, Inc. v. Camac Fund, LP*, No. 3:23-CV-2399, 2024 WL 2946584, at *3–4 (N.D. Tex. June 11, 2024) (dismissing Section 13(d) claims as moot where amended filings disclosed the alleged group and its members); *Taro Pharm. Indus., Ltd. v. Sun Pharm. Indus., Ltd.*, No. 09 Civ. 8262, 2010 WL 2835548, at *13 & n.9 (S.D.N.Y. July 13, 2010) (holding that amended Schedule 13D filings, which disclosed the parties' dispute, cured the alleged omissions without requiring defendants to admit liability); *Avnet, Inc. v. Scope Indus.*, 499 F. Supp. 1121, 1124–26 (S.D.N.Y.

1980) (holding that an amended Schedule 13D disclosing the alleged violation and the parties' conflicting positions cured any prior omission and rendered the disclosure claim moot).

Scully cannot avoid mootness by recasting its claim as based upon an alleged failure to disclose past conduct where the relevant disclosures have since been made. The required Section 13(d) disclosure is "not a rite of confession"; instead, "the law requires only that the disputed facts and the possible outcomes be disclosed." *Nano Dimension Ltd.*, 102 F.4th at 141 (citations omitted). Stated differently, even assuming the allegations that some subset of Defendants acted as a group in 2025 were true (they are not), once an amended filing discloses the possibility of the alleged group and the parties' competing positions, "Section 13(d) requires no more." *Id.* at 142 (further rejecting request for retrospective relief, emphasizing that Section 13(d) is not a weapon for management to discourage takeover bids or prevent the accumulation of substantial stock positions). Thus, even if Defendants had acted as a group in the past,[3] Plaintiff's claim does not support a grant of any prospective or retrospective relief from this Court. *See Rondeau v. Mosinee Paper Corp.*, 422 U.S. 49 (1975) (holding that a past Section 13(d) violation, standing alone, does not entitle a plaintiff to injunctive relief once the required disclosure has been made).

Eleventh Circuit authority leads to the same conclusion. In *Liberty National Insurance Holding Co. v. Charter Co.*, the court recognized that Section 13(d) imposes a reporting obligation for "purely informational purposes" and explained that "the obvious antidote for an allegedly false filing is a corrected filing." 734 F.2d 545, 565 (11th Cir. 1984). The court rejected the use of Section 13(d) to obtain relief disproportionate to any alleged disclosure deficiency, reasoning that

---

[3] As noted, Defendants vigorously deny such assertions by Plaintiff and state that the amended Schedule 13D filings were timely made once required following the formation of a group in July 2026, without regard for this lawsuit or Plaintiff's allegations. But the Court need not reach those issues for purposes of this motion to dismiss, given the mootness of the Section 13(d) claim.

equity does not permit a remedy broader than necessary to correct the asserted wrong. *Id.* at 559–60 & n.32.

More recently, the Eleventh Circuit affirmed dismissal of a Section 13(d) action where subsequent events eliminated any meaningful relief the court could award. *See Aim Immunotech, Inc.*, 2025 WL 974057, at *2–3. There, the court held that the issuer's demand for an injunction compelling additional Section 13(d) disclosures was moot because the circumstances giving rise to the requested disclosure had ended and the court could no longer grant effective relief. *Id.*

As Scully concedes, the Kellogg Defendants and MILFAM have already provided the information Section 13(d) requires and more: they disclosed that Scully has asserted that a group had been formed, they denied those allegations as to past activity, and they disclosed that they are currently working together as a group to change the composition of Scully's board. That disclosure satisfies Section 13(d)'s informational purpose. Not only does the disclosure acknowledge the dispute raised by Scully (which in and of itself is sufficient under the authorities cited above), the Kellogg and MILFAM interests have disclosed to the Company and its shareholders that a group has now been formed and that they intend to act together.

Because Scully identifies no material information that remains unavailable to the market, there is no further corrective-disclosure relief for the Court to award. Count I is moot and should be dismissed.

### B. Plaintiff Lacks Standing to Pursue Count I.

Similarly, Count I fails for a lack of standing. To establish standing, Article III requires that plaintiff have an actual, concrete injury that is redressable by the relief requested. *See, e.g., Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Because, for the reasons explained above, there is no injunctive relief for the Court to grant in light of the amended Schedule 13D filings, Plaintiff

does not have a redressable injury and therefore lacks standing to assert a claim under Section 13(d).[4]

The same defect applies to Scully's vague, alternative allegations concerning historical or technical deficiencies in the Kellogg Defendants' and MILFAM's prior filings. The Amended Complaint does not plausibly allege that any asserted deficiency presently deprives the market of material information that the Court could redress. Accordingly, Count I is independently subject to dismissal given Plaintiff's lack of standing.

## II. This Court Should Decline to Exercise Supplemental Jurisdiction and Dismiss Plaintiff's State Law Claims.

Scully's Section 13(d) claim supplies the sole asserted basis for federal-question jurisdiction. Once that claim is dismissed, only Plaintiff's state law claims under Counts II through VII for tortious interference and civil conspiracy remain. As a result, the Court must determine whether to exercise supplemental jurisdiction over the pendent state law claims pursuant to 28 U.S.C. § 1367(c)(3). This decision rests within the discretion of the district court. *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1088–89 (11th Cir. 2004); *Velis v. Sadhwani*, No. 21-14128-CIV, 2022 WL 553417, at *6 (S.D. Fla. Jan. 6, 2022) ("Supplemental jurisdiction 'is a doctrine of discretion, not of plaintiff's right'") (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966))). District courts are encouraged to dismiss any remaining state claims "when, as here, the federal claims have been dismissed prior to trial." *Raney*, 370 F.3d at 1089; *see also Hines v. Jones*, No. 24-12857, 2025 WL 671258, at *3 (11th Cir. Mar. 3, 2025) (finding no need to address the merits of plaintiff's state law claims, as the district court "did not abuse its discretion in dismissing

[4] A judicial determination that purely past conduct was unlawful, without a basis for the court to redress an injury, would result only in an impermissible advisory opinion. *See Emory v. Peeler*, 756 F.2d 1547, 1551–52 (11th Cir. 1985) (holding that a request for a declaration that completed conduct violated federal law presented no Article III controversy where the plaintiff alleged no continuing conduct or sufficiently imminent recurrence).

his state claims without prejudice when it dismissed his federal claims on the merits"); *Bell v. Broad Mgmt. Grp., LLC*, No. 22-80336-CIV, 2022 WL 18779106, at *5 (S.D. Fla. June 30, 2022) (declining to exercise supplemental jurisdiction over remaining state law claims after federal claims were dismissed prior to trial). If the state claims are appropriately dismissed without prejudice, the plaintiff is free to refile those claims in state court, to the extent permitted by law. *See Bell*, 2022 WL 18779106, at *5; *Velis*, 2022 WL 553417, at *6.

The primary facts that this Court must consider when determining whether to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(3) are judicial economy, convenience, fairness, and comity. *See Mueller v. Walmart Corp.*, No. 23-12854, 2026 WL 2727717, at *6 (11th Cir. Sept. 16, 2026) (holding that "in making its supplemental-jurisdiction determination the district court was obliged to 'consider and weigh . . . the values of judicial economy, convenience, fairness, and comity'"). None of these factors weigh in favor of exercising supplemental jurisdiction. This action remains at an early stage, and dismissal without prejudice will neither foreclose Plaintiff from pursuing any viable state-law theory in the appropriate forum nor result in any material duplication of federal judicial effort.

The Court should decline supplemental jurisdiction under 28 U.S.C. § 1367(c)(3) and need not evaluate the merits of Counts II through VII.

## III. The Amended Complaint Fails to State a Section 13(d) Claim Against Each of Charles Kellogg, IAT Insurance Group, Goose Creek Capital, and Harco National Insurance Company.

Count I is pleaded "Against All Defendants" and incorporates the first 128 paragraphs of the Amended Complaint wholesale. *See* Am. Compl. at 58, ¶ 258. Once the allegations are sorted by defendant, the Amended Complaint contains not a single allegation tying Charles Kellogg, IAT Insurance Group, Goose Creek Capital, or Harco National Insurance Company to the alleged Section 13(d) group, or giving any of them an independent disclosure obligation.

### A. The Amended Complaint Alleges No Agreement Involving These Four Defendants.

A Section 13(d) "group" exists only when two or more persons "agree to act together" to acquire, hold, vote, or dispose of an issuer's securities. 17 C.F.R. § 240.13d-5(b)(1); *see* 15 U.S.C. § 78m(d)(3). Generally speaking, the agreement among the defendants is the core of such a claim. *See Morales v. Quintel Ent., Inc.*, 249 F.3d 115, 124 (2d Cir. 2001). *Twombly* sets the pleading standard for alleged agreements. A plaintiff must plead "enough factual matter (taken as true) to suggest that an agreement was made." 550 U.S. at 556. Allegations of parallel conduct or a bare assertion of "agreement" do not suffice. *Id.* at 556–57.

Measured against that standard, the Amended Complaint's group allegations are about other parties. Assuming for these purposes that those group allegations are true (they are not), they concern communications among Defendants Peter Kellogg, Subin, and Wichers, and non-party David Pirrung: a December 2025 call in which Peter Kellogg reportedly mentioned his "guys" in Raleigh; a January 2026 call between Pirrung and Morrow; a January 2026 email from Peter Kellogg; and an alleged April 2026 agreement between "Wichers, acting on behalf of Milfam, and Peter Kellogg." Am. Compl. at ¶¶ 82–88. The Amended Complaint does not allege that Charles Kellogg, IAT Insurance Group, Goose Creek, or Harco took part in, authorized, or even knew about any of these communications. It does not allege either that any of them agreed to vote Scully shares a particular way or that they actually did so. The only allegation about who voted at the December 27, 2025 meeting identifies "Milfam and Kellogg (via proxy)." *Id.* at ¶ 18.

The Amended Complaint's references to Pirrung do not fill the gap. Pirrung is described as an officer of IAT Insurance Group who "reports directly to Peter Kellogg and Charles Kellogg." But every substantive allegation about him says he acted "on behalf of Kellogg," meaning Peter. *Id.* at ¶¶ 82, 84–86. The Amended Complaint never alleges that he acted for Charles Kellogg, IAT

Insurance Group, Goose Creek, or Harco, or that any of them authorized his conduct. The Amended Complaint's purported catch-all allegation that "each" Defendant "participated in communications . . . and/or formed a group," made on information and belief and in the jurisdictional section, *id.* at ¶ 57, is the kind of conclusory group pleading that *Iqbal*, *Weiland*, and numerous other precedential authorities reject. *See, e.g.*, *Weiland*, 792 F.3d at 1323 (identifying as an impermissible shotgun pleading a complaint that asserts claims against multiple defendants without specifying which defendant committed the alleged acts or omissions); *see also Mann v. Palmer*, 713 F.3d 1306, 1315 (11th Cir. 2013) (rejecting conclusory, speculative allegations made on information and belief).

Nor are the allegations of structural or familial relationships sufficient to state a claim as to these four Defendants. The Amended Complaint alleges that Charles is Peter's son and includes allegations about ownership or affiliation of Goose Creek, IAT Insurance Group, and Harco. *See* Am. Compl. ¶¶ 37–41. Each holds Scully shares. *Id.* And each was listed with Peter Kellogg as a "Reporting Person" under a joint-filing agreement in the July 31, 2026 amendment. *Id.* But such facts do not suggest an agreement with MILFAM to act in the 2025 Proxy Contest. It is a "deeply ingrained" principle of American law that a parent corporation is not liable for the acts of its subsidiaries merely because it owns them. *United States v. Bestfoods*, 524 U.S. 51, 61 (1998). The same logic applies in reverse, and to sister entities and family members. Being part of a corporate family, or related to Peter Kellogg, does not plausibly show that a defendant agreed with MILFAM to do anything. Nor do such facts satisfy Plaintiff's burden of putting forth a plausible pleading as to each named Defendant.

**B. The Amended Complaint Pleads No Independent Disclosure Obligation That Could Support Relief.**

The Amended Complaint's alternative theory, that MILFAM and Peter Kellogg each had

to file updated Schedule 13D disclosures even absent a group, is expressly limited to "Defendants Milfam and [Peter] Kellogg." Am. Compl. at ¶ 264. It says nothing about the four Defendants addressed in this Section III.

The only allegation that comes close is the claim that, before the July 31, 2026 amendments, Charles Kellogg and Peter Kellogg failed to disclose that Charles was "acting as part of the Kellogg and IAT group." *Id.* at ¶¶ 105–107. Still, that theory fails for two critical reasons. *First*, it is not the claim Count I pleads, which is a failure to disclose a group "in connection with the 2025 Proxy Contest." *Id.* at ¶ 263. *Second*, by Plaintiff's own account, that omission has been cured. The July 31, 2026 amendment identifies Charles Kellogg, Goose Creek, IAT Insurance Group, and Harco as Reporting Persons and discloses Charles's holdings. *Id.* at ¶¶ 38, 106. Once a disclosure has been made, there is nothing left to enjoin under Section 13(d). *See* Section I, *supra*.

For these reasons, Count I should be dismissed as to Charles Kellogg, IAT Insurance Group, Goose Creek Capital, and Harco National Insurance Company.

## IV. The Immaterial, Impertinent, and Scandalous References to Peter Kellogg's 2014 SEC Proceeding and the Nam Tai Matter Should be Stricken.

The Amended Complaint repeatedly refers to two matters that have nothing to do with the claim Plaintiff pleads. The first is a 2014 SEC cease-and-desist proceeding about late ownership and insider reports filed between 2000 and 2013. The second is Kellogg's alleged reporting about Nam Tai Property Inc., an entirely unrelated issuer. Am. Compl. at ¶¶ 9, 67, 95, 99–101, 114, 118–119. Neither matter involves Scully, MILFAM, or the 2025 Proxy Contest. Plaintiff includes these allegations for one reason: to suggest that because Peter Kellogg allegedly fell short of his reporting obligations before, he must have done so again. Rule 12(f) authorizes the Court to strike "any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). These allegations fit that description. They are unrelated to Count I (or any other cause of action in the

Amended Complaint), they serve only to suggest propensity, and keeping them in the pleading would unfairly prejudice Defendants.

### A. The Challenged Allegations Have Nothing to Do With the Claim Plaintiff Pleads.

Plaintiff's Section 13(d) theory is narrow. It claims Defendants formed an undisclosed "group" in connection with the 2025 Proxy Contest and failed to disclose it between November 2025 and July 31, 2026. Am. Compl. at ¶¶ 1, 30, 80, 108–112, 262–263. Whether that group existed turns on one question: did Defendants agree to act together to acquire, hold, vote, or dispose of Scully shares during that period? *See* 15 U.S.C. § 78m(d)(3); 17 C.F.R. § 240.13d-5(b)(1). Nothing in the challenged paragraphs helps answer it.

Even so, the Amended Complaint spends many paragraphs on unrelated history.

**The 2014 SEC proceeding.** These allegations describe a September 2014 cease-and-desist proceeding that came out of an SEC enforcement sweep. It concerned late ownership and insider reports filed between 2000 and 2013, and it ended with a $100,000 penalty. Am. Compl. at ¶¶ 9, 67, 95, 99–101, 114. The Amended Complaint features it twice, once in the Preliminary Statement under the heading that Kellogg "has a history of violating Section 13(d)," *id.* at ¶ 9, and again in a separate section titled "Kellogg's Prior Section 13(d) Violations," *id.* at 27.

**Nam Tai.** These allegations concern Kellogg's alleged reporting about Nam Tai Property Inc., an unrelated issuer, between 2004 and 2020. They rely on "potential" violations inferred from Form 13F filings. *Id.* at ¶¶ 118–119.

None of these allegations involves MILFAM, the 2025 Proxy Contest, or any alleged communication or agreement about voting Scully shares. The SEC matter was resolved roughly eleven years before the events at issue. Nam Tai involved a different and entirely unrelated issuer. References to each of these unrelated events can be removed without changing what Plaintiff must

prove on Count I.[5] That is the definition of immaterial and impertinent matter.

**B. The Allegations Serve Only to Suggest Propensity and Are Unduly Prejudicial.**

The framing of the Amended Complaint makes clear the reason for Plaintiff's inclusion of these immaterial allegations. They seek to present Kellogg as someone who violated Section 13(d) before and so presumably did it again. *See* Am. Compl. at ¶ 118 (Kellogg's "13D violations are not limited to those associated with his and his affiliates' holdings in the Company"). Our legal system has long rejected inferences of that nature. The Supreme Court has explained that prior-misconduct evidence is excluded not because it is irrelevant but because it leads the factfinder to prejudge a person rather than the conduct charged. *Michelson v. United States*, 335 U.S. 469, 475–76 (1948). Rule 404(b) codifies that principle, and the Supreme Court has described the rule as guarding against unfair prejudice from evidence offered to show bad character. *Huddleston v. United States*, 485 U.S. 681, 685–87, 691–92 (1988); *see* Fed. R. Evid. 404(b)(1). A pleading should not be used to put allegations before the Court whose only function is the one the Rules of Evidence forbid.

Courts have struck references to prior SEC proceedings for exactly this reason. In *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893–94 (2d Cir. 1976), the Second Circuit held that references to an earlier SEC consent judgment were properly stricken under Rule 12(f). The SEC matter is old, it concerned different filings, and Plaintiff relies on it only to suggest character.

If these paragraphs stay in, Defendants will have to answer them, and the case risks turning into a series of side disputes about decades-old filings and filings with respect to unrelated issuers. The allegations also stay on the public docket, where Plaintiff has already used them to label Kellogg a repeat violator in the opening pages of its Amended Complaint. *See* Am. Compl. at ¶ 9.

[5] Count I of the Amended Complaint is the only cause of action directed at the Kellogg Defendants.

The Court should strike paragraphs 9, 67, 95, 99–101, 114, and 118–119 of the Amended Complaint.

## CONCLUSION

For the reasons stated above, the Court should dismiss Count I as moot and/or for lack of standing, decline to exercise supplemental jurisdiction, and dismiss Counts II through VII without prejudice. In the alternative, the Court should dismiss Count I as to Charles Kellogg, IAT Insurance Group, Goose Creek Capital, and Harco National Insurance Company for failure to state a claim. The Court should also strike paragraphs 9, 67, 95, 99–101, 114, and 118–119 of the Amended Complaint.

Respectfully submitted this 13th day of October, 2026.

**BAKER & McKENZIE LLP**

By: */s/ William V. Roppolo*
William V. Roppolo, Esq.
Florida Bar No. 182850
william.roppolo@bakermckenzie.com
Annasofia A. Roig, Esq.
Florida Bar No. 1018149
annasofia.roig@bakermckenzie.com
830 Brickell Plaza, Suite 3100
Miami, Florida 33131
Telephone: (305) 789-8900
Facsimile: (305) 789-8953

*Attorneys for Kellogg Defendants*

**K&L GATES LLP**

*/s/ Jonathan B. Morton*
Jonathan B. Morton, Esq.
Florida Bar No. 956872
Jonathan.Morton@klgates.com
Michelle Komisarchik
Florida Bar No. 1070480
Michelle.Komisarchik@klgates.com
One Biscayne Tower
2 S. Biscayne Blvd., Suite 1900
Miami, Florida 33131-2399
Telephone: (305) 539-3300
Facsimile: (305) 358-7095

*Attorneys for MILFAM Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 13th day of October, 2026, this Motion to Dismiss was filed using the Court's CM/ECF electronic notification system and served on all counsel of record.

*/s/ Jonathan B. Morton*