**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT PIERCE DIVISION**

**CASE NO. 26-14257-CIV-CANNON/Galler**

**SCULLY ROYALTY LTD.,**

Plaintiff,

v.

**IAT REINSURANCE CO. LTD., et al.,**

Defendants.

_________________________________/

**ORDER DENYING PLAINTIFF'S EXPEDITED MOTION FOR LEAVE TO CONDUCT EXPEDITED DISCOVERY**

**THIS MATTER** comes before the Court upon Plaintiff Scully Royalty Ltd.'s ("Scully") Expedited Motion for Leave to Conduct Expedited Discovery (the "Motion") [ECF No. 21]. Scully, a foreign private issuer [ECF No. 19 ¶ 35], asks for expedited written and deposition discovery from the eleven Defendants named in this securities lawsuit [ECF Nos. 21-1, 21-2, 21-3]. This information, as explained by Scully, is necessary "to determine whether to seek a preliminary injunction preventing an uninformed shareholder vote" at an upcoming shareholder meeting in January 2027 [ECF No. 21 pp. 1–2]. Scully has not yet filed any such request for injunctive relief, and in the meantime, Defendants have filed a pending Motion to Dismiss the First Amended Complaint [ECF No. 23]. Scully acknowledges the mandatory stay of discovery imposed by the Private Securities Litigation Reform Act ("PSLRA") and the limited carveout to that rule "to preserve evidence or to prevent undue prejudice to that party" [ECF No. 21 pp. 9–10; ECF No. 30 pp. 1, 4–5]. 15 U.S.C. § 78u-4(b)(3)(B). Scully also acknowledges the more general good cause showing to obtain early discovery under Federal Rule of Civil Procedure 26(d)(1) [ECF No. 21 pp. 5–6; ECF No. 30 pp. 1–4]. But it says it has met its burden to warrant expedited

discovery because, absent such discovery, shareholders at the forthcoming January 2027 vote will lack enough information regarding the extent and nature of "group" vote coordination between two sets of Defendants—the "Milfam" Defendants and the "Kellogg" Defendants—prior to July 31, 2026 [ECF No. 36 pp. 60–61]. Defendants uniformly oppose the request for early discovery, emphasizing that their amended Schedule 13(d) filings already disclose what Section 13(d) requires and that Plaintiff's request for historical information about a past proxy dispute is insufficient to overcome the PSLRA stay or to show good cause [ECF Nos. 26–27].

Upon review of the Motion [ECF No. 21], Defendants' Opposition [ECF No. 26], Plaintiff's Reply [ECF No. 30], and the arguments presented at a hearing on October 16, 2026 [ECF No. 32], Sully's Motion is **DENIED** as set forth below.

## RELEVANT BACKGROUND AND PROCEDURAL HISTORY

Scully is a foreign private issuer listed on the New York Stock Exchange [ECF No. 19 ¶ 4]. It is led by Michael J. Smith, its Executive Chairman and, since August 2026, its Interim Chief Executive Officer and Chief Financial Officer [ECF No. 19 ¶ 35].

Defendants fall into two camps. The first consists of Peter Kellogg, his son Charles Kellogg, and four companies they own or control (the "Kellogg Defendants" or "Kellogg"). The second is Milfam LLC, a family office in Stuart, Florida; its president, Neil Subin; and three of Milfam's 2025 board nominees, Skyler Wichers, Alan Howe, and Mark Holliday (the "Milfam Defendants" or "Milfam"). Together, the two camps hold about 48.5% of Scully's voting power [ECF No. 19 ¶¶ 8, 10, 36–46]. Defendants publicly oppose Scully's board and seek to replace it with Milfam's nominees at an Extraordinary General Meeting that Milfam requisitioned, now set for January 12, 2027 [ECF No. 21 pp. 1–2, 4; *infra* n.1].

Scully initiated this lawsuit on July 15, 2026 [ECF No. 1]. The First Amended Complaint

asserts one claim under Section 13(d) of the Securities Exchange Act of 1934 against all Defendants (Count I) and six Florida tort and conspiracy claims against some or all of the Milfam Defendants (Counts II through VII) [ECF No. 19 pp. 58–68]. The crux of the Section 13(d) claim, which forms the core of the present discovery dispute, is the allegation that the two camps coordinated as an undisclosed "group" during and after Milfam's late-2025 proxy contest, without disclosing their coordination pursuant to Section 13(d) of the Exchange Act and its implementing regulations [ECF No. 19 ¶¶ 1, 30, 80, 259–266]. 15 U.S.C. § 78m(d); 17 C.F.R. §§ 240.13d-1, 240.13d-2, 240.13d-5, 240.13d-101.

Defendants deny Plaintiff's suggestion that they were under any Section 13 "group" disclosure obligation prior to July 31, 2026, the date on which they filed Amended Schedule 13(d) filings disclosing their participation in discussions to nominate a slate of shareholders for election at the upcoming Extraordinary General Meeting on January 12, 2027 [ECF No. 26 pp. 1–2; ECF No. 27 pp. 7–11].[1]

---

[1] The Court takes judicial notice of these Section 13(d) filings (July 31, 2026), accessible publicly at https://www.sec.gov/Archives/edgar/data/16859/000110465926089333/xslSCHEDULE_13D_X02/primary_doc.xml [https://perma.cc/WTR4-2YQK]; https://www.sec.gov/Archives/edgar/data/16859/000121390026084165/xslSCHEDULE_13D_X02/primary_doc.xml [https://perma.cc/4V8E-8F78].

As relevant here, Item 4 in the Kellogg Section 13(d) states (in part):

> The Reporting Group intends to vote together in favor of the MILFAM Nominees and against the current directors of the Issuer, whether at an annual general meeting of the shareholders or at an extraordinary general meeting of the shareholders, which may involve the Reporting Group delivering proxies to a representative of MILFAM, who will attend such meeting and vote the Reporting Groups' common shares. The Reporting Group expects that the MILFAM Nominees, if elected to the board, would replace the current management of the Issuer. . . . The Reporting Group may engage in further discussions regarding the foregoing, including with other shareholders of the Issuer, or take other actions concerning the business, operations, assets, governance, strategy and future plans of the Issuer . . . . The

The greater backstory between Scully and Milfam is detailed in the First Amended Complaint and reveals a long-running contest for control of Scully intermingled with two recent lawsuits in the Grand Court of the Cayman Islands. The latest chapter in this saga dates back to the November–December 2025 timeframe when Milfam announced that it was launching a control contest for Scully at its then-upcoming 2025 Annual Meeting [ECF No. 19 ¶ 70]. Scully took issue with the procedural propriety and timing of Milfam's proxy materials, and advised Milfam accordingly [ECF No. 19 ¶ 74]. That dispute led Milfam to initiate a lawsuit in the Cayman Islands, referred to herein as "the First Cayman Proceeding," in which Milfam sought a declaration that its director nomination complied with Scully's charter [ECF No. 19 ¶ 75]. The Grand Court of the Cayman Islands promptly ruled in Milfam's favor, finding no deficiency in Milfam's notice [ECF No. 19 ¶ 75]. Scully's board then tried to postpone the 2025 Annual Meeting (scheduled for December 27, 2025), citing its pending appeal of the First CaymanProceeding [ECF No. 19 ¶ 76]. But Milfam proceeded anyway, holding a purported annual meeting on December 27, 2025, and voting in its preferred slate of directors at that meeting [ECF No. 19 ¶ 77].

Immediately after that December 27, 2025 meeting—dubbed the "hallway meeting" by Scully—Scully began efforts to publicly communicate the invalidity of Milfam's efforts, including by issuing a Form 6-K announcing Milfam's invalid 2025 Annual Meeting [ECF No. 19 ¶ 78]. Milfam responded by filing a second lawsuit in the Cayman Islands on January 5, 2026 ("Second Cayman Proceeding")—this time seeking a declaration *validating* Milfam's conduct in holding the

---

> Reporting Persons, in connection with any such discussions, may enter into one or more confidentiality agreements and may enter into voting agreements, or other similar agreements with the purpose or effect of facilitating such actions.

Scully Royalty Ltd., Schedule 13(d), Item 4 (filed July 31, 2026) (concerning the Kellogg interests). Item 4 in the analogous Milfam Amended Section 13(d) contains a similar disclosure. Scully Royalty Ltd., Schedule 13(d), Item 4 (filed July 31, 2026) (Milfam).

2025 Annual Meeting and in voting in favor of Milfam's preferred directors [ECF No. 19 ¶ 79].[2] Milfam did not prevail in that litigation, however; on July 2, 2026, the Cayman court invalidated Milfam's purported "hallway meeting" and all of its attendant actions, including the vote of the Milfam Nominees [ECF No. 19 ¶¶ 120–121].[3] After that victory, Scully did two things: (1) first, it issued a public Form 6-K (July 8, 2026), explaining the invalidity of Milfam's actions after the unlawful vote and the unauthorized SEC filings filed by Milfam during the period in which its slate of directors controlled the board [ECF No. 19 ¶¶ 122–123],[4] and (2) second, it filed this lawsuit.

Fast forward to the present, an Extraordinary General Meeting of Shareholders is scheduled for January 12, 2027, at which time Scully's shareholders will vote for the company's board of directors [ECF No. 21 p. 1]. The parties do not appear to dispute that Defendants, who collectively control 48.5% of the company's voting power, are poised to acquire enough support to elect their desired slate of directors [ECF No. 21 p. 7; ECF No. 19 ¶ 10]. In the meantime, as noted, Defendants filed amended disclosures on July 31, 2026, in which they indicate that they are acting as a "group" under Section 13(d) and intend to vote together to displace the current Scully Board at the upcoming meeting [ECF No. 21 p. 4; *supra* n.1]. According to Scully, these amended

---

[2] During the period between the December 27, 2025, Board Meeting and the conclusion of the Second Cayman Proceeding, the Milfam board purported to control the company, including by terminating Scully's CEO [ECF No. 19 ¶ 145] and holding themselves out as the true board of directors in their interactions with Scully's registered public accounting firm, AOGB [ECF No. 19 ¶¶ 120–164]. These issues are the subject of Scully's state law claims and are not further elaborated upon here except to the extent they bear generally on the parties' background.

[3] The Court takes judicial notice of this Form 6-K filing, accessible here: sec.gov/Archives/edgar/data/16859/000110465925124898/tm2534443d1_6k.htm [https://perma.cc/R2Q8-UYAB]

[4] The Court takes judicial notice of this Form 6-K filing, accessible here: sec.gov/Archives/edgar/data/16859/000110465926003705/tm263235d1_6k.htm [https://perma.cc/4RAS-8RR3]

disclosures are inaccurate because they fail to indicate that the Milfam Defendants and Kellogg Defendants were, as Scully alleges, working together as a Section 13(d) group prior to July 31, 2026, the date of the amended disclosure [ECF No. 21 p. 4]. In addition, in advance of the upcoming meeting, one of Milfam's director nominees, Wichers, submitted a questionnaire to shareholders in which he reveals that, "[a]fter the filing of MILFAM's December 8, 2025 proxy statement for the 2025 [annual general meeting], [he] had conversations with Peter Kellogg and his affiliated parties, as well as other shareholders, regarding support for the election of MILFAM's nominees (the 'MILFAM Nominees') as directors of the Corporation" [ECF No. 38-1 p. 24; *see* ECF No. 21 p. 5 (quoting questionnaire)]. Those conversations, the questionnaire states, "led to the formation of a group, as disclosed in the Schedules 13D/A filed July 31, 2026 by each of MILFAM and its affiliates and Peter Kellogg and his affiliates" [ECF No. 38-1 p. 24].

Scully now seeks, through the instant Motion [ECF No. 21], expedited discovery in advance of the Extraordinary General Meeting. Scully's theory, stated in general terms in the Motion and sharpened slightly during the Hearing, is that shareholders who vote at that meeting will lack sufficient information about the length and extent of the coordination between the Milfam and Kellogg camps before July 31, 2026 [ECF No. 30 pp. 2–3 (referring to "uninformed shareholder vote," without elaboration); ECF No. 36 p. 60]. Specifically, Scully asks for documents and communications among Defendants about their SEC filings, Milfam's proxy, shareholder meetings, and voting or nomination agreements from November 1, 2025, through October 5, 2026, plus two depositions on undefined topics [ECF Nos. 21-1, 21-2, 21-3]. Further, Scully acknowledges that it exchanged and received written discovery from the Milfam Defendants in the Second Cayman Proceeding referenced above but indicates that it has elected not to review that discovery out of undefined concerns regarding use of that information in

connection with this proceeding [ECF No. 36 pp. 10, 27–28].

**LEGAL STANDARDS**

The PSLRA provides that, "[i]n any private action arising under this chapter, all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss, unless the court finds upon the motion of any party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party." 15 U.S.C. § 78u-4(b)(3)(B). Congress authorized the PSLRA to curb "vexatious discovery requests" and to keep discovery costs off defendants until a court has sustained the complaint. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 320–21 (2007) (quoting *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 81 (2006)); *SG Cowen Sec. Corp. v. U.S. Dist. Ct.*, 189 F.3d 909, 911–13 (9th Cir. 1999). The moving party bears the burden to meet this exception, which is satisfied in limited circumstances where the stay works an "improper or unfair detriment" beyond the delay every stay imposes. *See Med. Imaging Ctrs. of Am., Inc. v. Lichtenstein*, 917 F. Supp. 717, 720 (S.D. Cal. 1996); *SG Cowen*, 189 F.3d at 912 (explaining that the exception is for "exceptional circumstances," such as "the terminal illness of an important witness").

Apart from the PSLRA, "[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except . . . when authorized by these rules, by stipulation, or by court order." Fed. R. Civ. P. 26(d)(1). Courts permit earlier discovery where the moving party shows good cause, which "may be found where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." *TracFone Wireless, Inc. v. Holden Prop. Servs., LLC*, 299 F.R.D. 692, 694 (S.D. Fla. 2014). Although there is no hard-and-fast test for evaluating good cause, "[r]elevant considerations include '(1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests;

(3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made.'" *Archuleta v. GAF Materials LLC*, No. 25-CV-627, 2026 WL 2675848, at *2 (N.D. Ind. Sept. 10, 2026) (quoting *Ibarra v. City of Chicago*, 816 F. Supp. 2d 541, 554 (N.D. Ill. 2011)).[5] Ultimately, however, each request for expedited discovery depends upon the facts and circumstances of the case, and the Court retains broad discretion over the management and scheduling of discovery. *See Johnson v. Bd. of Regents*, 263 F.3d 1234, 1269 (11th Cir. 2001).

## DISCUSSION

Fully advised in the premises, the Court has little trouble concluding that Scully has failed to meet its burden to warrant expedited discovery under the limited exception to the default discovery stay in the PSLRA or the good cause standard under Rule 26. Because the facts and circumstances overlap significantly under both analyses, the Court addresses the standards together but would reach the same conclusion individually as well.

***First***, notwithstanding Scully's pronouncements of impending harm flowing from an "uninformed shareholder vote" in January 2027, Scully's actual showing of harm is vague, bare, and unaccompanied by sufficient indicia of due diligence. A starting point is Plaintiff's description of alleged harm in the Motion [ECF No. 21]. That filing, the entire purpose of which

[5] Other courts appear to apply a more stringent test for good cause that requires a showing of "irreparable injury" absent expedited discovery plus "some probability of success on the merits," "some connection between the expedited discovery and avoidance of the irreparable injury," and "some evidence that the injury that will result without expedited discovery looms greater than the injury that the defendant will suffer if the expedited relief is granted." *Ibarra*, 816 F. Supp. 2d at 554 (internal quotation marks and brackets omitted); *see Tracfone Wireless, Inc. v. Adams*, 304 F.R.D. 672, 673 (S.D. Fla. 2015) (authorizing expedited discovery to mitigate "irreparable harm caused by Defendants' ongoing alleged scheme"). Any differences in the approach to good cause are not dispositive in this case, as Plaintiff fails to satisfy even the weaker formulations of the standard.

is to justify a deviation from the default sequence of discovery in securities cases (and, in general), says only that voters at the Extraordinary General Meeting will be "uninformed"—yet it offers no concrete elaboration or detail about that purported informational gap [*see* ECF No. 21 pp. 2, 9–10; ECF No. 30 p. 1]. This conclusory showing is likely reason enough to deny the Motion, as any party seeking a departure from standard discovery rules must, at a minimum, support its request with more than vague claims. Equally curious, there is strong reason to believe (as discussed during the Hearing and further corroborated through a post-hearing filing) that Scully remains in possession of discovery materials that overlap directly with the core factual dispute raised in the Motion [ECF No. 33-1 p. 7; ECF No. 36 pp. 60–61]. Specifically, in the Second Cayman Proceeding, the Cayman court ordered Milfam to disclose any communications or agreements with the Kellogg parties (or their agents) regarding their shareholder voting decisions vis-à-vis the Scully board in 2025 [ECF No. 33-1 p. 7; ECF No. 36 pp. 60–61]. Despite that discovery order and the discovery exchanged as a result, Scully has elected—for reasons unexplained and unsupported—not to even review that discovery to determine whether and to what extent it contains the written discovery sought in the Motion [*see* ECF No. 36 pp. 9–11, 26–28, 38–39].[6] There again, Scully's showing falls considerably short. And, although Scully did more at the hearing to shed light on its "uninformed vote" concerns [ECF No. 36 p. 61], even now, the Court is left with no clear understanding of how the information sought in the expedited discovery materially adds to the mix of information already in the public domain regarding the Scully-Milfam dispute and the now-disclosed fact of Section 13(d) "group" coordination between Milfam and Kellogg. All told, for a party seeking what it seeks here—relief from what is otherwise a

---

[6] There is no indication that Milfam did not produce the ordered discovery.

strong, default rule against early discovery in securities cases—Scully has done little to prove its case.

***Second***, even accepting Scully's broad concern about preventing an "uninformed shareholder vote," the background reality leading up to the present dispute is that much of the shareholder "drama" leading up to the December 2025 proxy contest and afterward—including the now-invalidated actions of the Milfam parties in connection with the December 2025 proxy contest and the "group" coordination between Milfam and Kellogg as declared on July 31, 2026—has been publicly aired through a host of public SEC filings, the Cayman litigation, and now this case. It is known, for example, that (1) Scully and Milfam have been at odds for some time about the efficacy of Scully's current management and who should control Scully going forward; (2) Milfam has taken efforts to replace the Scully board with Milfam's preferred candidates, including (most publicly) during the contested 2025 proxy contest; and (3) Milfam took a series of actions post-December 2025 that, according to Scully, caused harm to Scully's interests.[7] What is also clear, with key relevance for present purposes, is that (1) the Milfam and Kellogg parties have declared themselves to be working together for Section 13(d) purposes in connection with the upcoming meeting [ECF No. 19 ¶¶ 38, 106 (referencing July 31, 2026 Amended Section 13(d); *supra* n.1] and (2) back in early December 2025 (before the "hallway meeting"), representatives of Kellogg and Milfam were in conversations regarding Scully's management and "support for the election of MILFAM's nominees . . . as directors of the Corporation" [ECF No. 38-1 p. 24

[7] For example, the public record, as Scully's own pleading lays it out, contains Milfam's November 2025 proxy contest and its Schedule 13(d) statement that it had "engaged in preliminary discussions with other shareholders" about removing the board [ECF No. 19 ¶¶ 13–14, 69]; the December 27, 2025 meeting at which the two camps voted their shares together for Milfam's slate [ECF No. 19 ¶ 18]; and the amended Schedule 13(d) filings that disclose the group, its plan, this lawsuit, and the dispute over when the group formed [ECF No. 19 ¶¶ 125–128].

(Wichers Questionnaire submitted in anticipation of the January 2027 vote)]. This amalgam of information is available for shareholders to review prior to the upcoming January meeting, and it reinforces what everyone in this case already knows: that Milfam and Kellogg wish to replace the current Scully board and are coordinating their votes for that purpose. Whether Milfam and Kellogg initiated communications one month earlier in November 2025, or whether they reached "group" status for disclosure purposes under Section 13(d) at some earlier point in 2025, does not change the fundamental "information" known to shareholders now regarding coordination between the Milfam and Kellogg camps.[8] Regardless, even if there were some value to be gained from greater insight into the degree of pre-July 2026 alleged "group" coordination, Plaintiff has not established that any such quantum of information amounts to "undue prejudice" under the PSLRA or establishes irreparable harm or need under Rule 26.

***Third***, while the absence of a pending motion for injunctive relief is not by itself fatal to Plaintiff's position, it is nevertheless another strong indicator of the absence of concrete harm absent the requested expedited discovery. As framed, Plaintiff seeks expedited discovery "to determine whether to seek a preliminary injunction preventing an uniformed shareholder vote" [ECF No. 21 p. 2]. The parties have not cited any instance in which a court lifted the automatic PSLRA discovery stay absent a pending motion for injunctive relief.[9] This is not surprising, as the PSLRA establishes a strong default presumption against discovery during the pendency of any motion to dismiss.[10] 15 U.S.C. § 78u-4(b)(3)(B). In any event, even if there could be a situation

[8] As noted *supra*, Plaintiff's requested time period for expedited discovery starts on November 1, 2025, and runs through October 5, 2026 [ECF No. 21-1 ¶ 15].

[9] Plaintiff identifies two cases in which courts granted expedited discovery in the absence of a pending motion for injunctive relief, but neither case is a securities action subject to the PSLRA's standards [*see* ECF No. 21 p. 9; ECF No. 36 p. 24].

[10] There is no suggestion here of a need for expedited discovery to preserve evidence.

that presents PSLRA-level undue prejudice without a preexisting basis to seek injunctive relief, this is not that case, for all of the reason stated above.

***Finally***, although less relevant to decide the discrete discovery request presented now, there is considerable doubt that the stated end goal for Plaintiff as referenced in the Motion—seeking a preliminary injunction—would yield any entitlement to relief under the framework of Section 13(d). Any motion for injunctive relief would, of course, be subject to the traditional standards attendant to such requests, including a showing of substantial likelihood of success on the merits of Plaintiff's Section 13(d) claim. Section 13(d), in turn, is an informational tool to "ensure that an issuer receives notice that a significant amount of its shares is being accumulated," and its overall purpose is to "prevent persons who already have attained beneficial ownership of some amount of an issuer's securities from combining to control over five percent of a class of securities, yet ducking the reporting requirement." *Hemispherx Biopharma, Inc. v. Johannesburg Consol. Invs.*, 553 F.3d 1351, 1364 (11th Cir. 2008). Without expressing a final opinion on the matter, it is hard to see how knowing more about the timing and extent of coordination between the Milfam and Kellogg parties in November 2025 through the Amended Disclosures in July 31, 2026, would "move the ball" forward in terms of notifying the public that Milfam and Kellogg are "combining to control over five percent of a class of securities." *Id.*

For these reasons, Plaintiff's bid for expedited discovery pending resolution of Defendants' Motion to Dismiss fails. Plaintiff bears the burden both as to the PSLRA and the good cause standard, and it has failed to meet that burden—most especially as to "undue prejudice" under the PSLRA but also as to the showing of irreparable harm and/or need under Rule 26. The Court therefore need not engage with the additional factors pertinent to the good cause inquiry, including,

for example, the narrowness or breadth of the discovery requested or whether producing the discovery would impose an undue burden on Defendants in this accelerated posture.

**CONCLUSION**

Fully advised in the premises, it is **ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Expedited Motion for Leave to Conduct Expedited Discovery [ECF No. 21] is **DENIED WITHOUT PREJUDICE**.
2. The Court expresses no position on the merits of Defendants' Motion to Dismiss [ECF No. 23], which remains in the briefing stages.

**ORDERED** in Chambers at Fort Pierce, Florida, this 27th day of October 2026.

**AILEEN M. CANNON**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record