**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT PIERCE DIVISION**

SCULLY ROYALTY LTD.,

Plaintiff,

v.

IAT REINSURANCE CO. LTD., et al.,

Defendants.

Case No. 2:26-cv-14257-AMC

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT AND MOTION TO STRIKE**

This case arises under Section 13(d) of the Securities Exchange Act of 1934, 15 U.S.C. § 78m(d) (the "Exchange Act"), which requires any group beneficially owning more than 5% of a company's stock to disclose "information as to any contracts, arrangements, or understandings with any person with respect to any securities of the issuer, including…the giving or withholding of proxies, naming the persons with whom such contracts, arrangements, or understandings have been entered into, and giving the details thereof." 15 U.S.C. § 78m(d)(1)(E); ECF 19, First Amended Complaint ("FAC") ¶¶ 1–3, 47, 63. The FAC also asserts claims for tortious interference and civil conspiracy under Florida common law.

## I. INTRODUCTION AND BACKGROUND

Plaintiff Scully Royalty Ltd. ("Scully") is a foreign private issuer traded on the New York Stock Exchange. FAC ¶ 35. Scully alleges that, starting in 2025, Defendants coordinated as a group to vote Scully shares without disclosing their efforts on Schedule 13D. *Id.* at ¶¶ 263-65. Specifically, in late 2025, Defendants IAT Reinsurance Co. Ltd., IAT Insurance Group, Inc., Peter Kellogg ("Kellogg"), Charles Kellogg, Goose Creek Capital, Inc., and Harco National Insurance Company (collectively, the "Kellogg Group"), and Milfam LLC ("Milfam"), Neil Subin, Skyler

Wichers, Alan Howe, and Mark Holliday (collectively, the "Milfam Group"), did not disclose their coordinated effort to take control of Scully's Board. FAC ¶¶ 1, 12-19, 70-77, 80. That effort failed when, on July 2, 2026, the Cayman Court ruled that Scully's incumbent Board remained in control. *Id.* at ¶¶ 120-121.

Scully filed this action on July 15, 2026. ECF 1. On July 31, 2026, the Milfam Group and the Kellogg Group each filed Schedule 13D amendments, stating that they "may be deemed to be members of a 'group' (within the meaning of Rule 13d-5 under the Act)," and that:

> The [Reporting Persons] deny that they acted as a group with any of the other defendants during the period addressed in the Issuer's complaint. The Reporting Persons did not decide to act as a group (on a go-forward basis) with any of the other defendants named in the complaint until immediately prior to the filing of this Amendment.

FAC ¶¶ 32-33; *see also* ECF 29-1, ECF 29-2. These amendments do not merely deny the original complaint's allegations; they affirmatively state that Defendants formed a group "on a go-forward basis" on July 31. *Id.* They do not disclose, as the statute requires: "information as to any contracts, arrangements, or understandings with any person with respect to any securities of the issuer, including…the giving or withholding of proxies, naming the persons with whom such contracts, arrangements, or understandings have been entered into, and giving the details thereof" for the period from late 2025 until July 31, 2026. 15 U.S.C. § 78m(d)(1)(E). They do not tell Scully and other stockholders "the details" necessary to understand how Defendants worked together in an effort to take control of Scully, including the giving of proxies and voting of their shares during the 2025 takeover attempt.

Scully filed the FAC on September 1, 2026, because the July 31 Schedule 13D amendments did not disclose information required by Section 13(d). ECF 19. On September 16, 2026, Defendants filed further Schedule 13D amendments disclosing that they had requisitioned an

Extraordinary General Meeting ("EGM") on January 12, 2027 to replace four incumbent directors with Defendants' nominees—Defendants Wichers and Holliday, and non-parties Jerrod Freund and Nimesh Patel. ECF 23-1, 23-2. Those amendments confirm that Defendants are coordinating a second attempt to replace Scully's Board.

Scully's FAC asserts Count I against all Defendants for violation of Section 13(d) and seeks (1) a declaration that Defendants have violated Section 13(d) and related rules, and (2) an injunction ordering Defendants to furnish accurate disclosures on Schedule 13D before they can vote their shares. FAC ¶¶ 258-266; Prayer ¶ (a) and (b). Defendants move to dismiss Count I under Rule 12(b)(1) on the basis that Defendants' July 31, 2026 Schedule 13D amendments allegedly moot Count I. ECF 23, Defs. Mot. to Dismiss ("Mot.") at 7-10. The Court should deny that motion because the claim is not moot. Defendants' effort to take control of Scully is ongoing and their amendments omit material facts required by Section 13(d) that shareholders need before voting at the EGM. FAC ¶¶ 262-263. These material facts include the identity of the "other shareholders" with whom Milfam discussed removing the Board, the agreement to seat Kellogg nominees, the role of David Pirrung as Kellogg's agent in group discussions, the Kellogg Defendants' agreement with Milfam Defendants before July 2026, and the terms of the voting or proxy arrangement Defendants used in December 2025 and may use again. *Id.* at ¶¶ 18, 21-24, 30, 69, 82-88, 125-26. These facts go to who constitutes the group, what they agreed to, whether Kellogg coordinated with Milfam before July 2026, and who will control Scully if Defendants' nominees – including defendants Wichers and Holliday – are elected.

The Kellogg Group also moves to dismiss Count I under Rule 12(b)(6), arguing that the FAC's allegations are not sufficiently particular as to their conduct. Mot. at 12-15. The Court should also deny the motion to dismiss Count I as to these Defendants under Rule 12(b)(6) because

the FAC includes specific allegations about these Defendants' stock ownership and control, and they are included in the recent Schedule 13D amendments.

Scully's FAC asserts Counts II through VII for tortious interference and civil conspiracy against certain of the Milfam Group Defendants. FAC ¶¶ 267-315. These Defendants move to dismiss Counts II through VII under Rule 12(b)(1), arguing that the court should decline to exercise supplemental jurisdiction over these state law claims. Mot. at 11-12. The Court should deny the motion to dismiss Counts II through VII and should exercise supplemental jurisdiction under 28 U.S.C. § 1367(a) over these claims because Count I is not moot and Counts II through VII arise from the same operative facts, which Defendants' Motion does not dispute.

Defendants also move under Rule 12(f) to strike certain FAC allegations that refer to a public Enforcement Order by the SEC against Kellogg for prior violations of Section 13(d), including with respect to the predecessor entity to Scully, and allegations that refer to his public Schedule 13D filings regarding another issuer, arguing that they are "redundant, immaterial, impertinent, or scandalous matter." *Id.* The Court should deny the motion to strike because the allegations are relevant, factual, and refer to publicly available SEC materials.

## II. LEGAL STANDARD

### A. Motion to Dismiss Under Rule 12(b)(1)

A Rule 12(b)(1) motion takes one of two forms: a "facial attack" or a "factual attack." *Town of Indian River Shores v. City of Vero Beach*, 622 F. Supp. 3d 1265, 1270 (S.D. Fla. 2022) (Cannon, J.) (quoting *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)). On a facial attack, the court takes the complaint's allegations "at face value." *Roberto v. Addison Place Apartments Prop. Owner LLC*, 2024 WL 6977135, at *3 (S.D. Fla. Oct. 24, 2024). On a factual attack, the court may consider matters outside the pleadings. *Lawrence*, 919 F.2d at 1529. But

when the jurisdictional question is "intertwined with the merits," the court "should apply a Rule 56 summary judgment standard" and "federal claims should not be dismissed on motion for lack of subject matter jurisdiction when that determination is intermeshed with the merits of the claim and when there is a dispute as to a material fact." *Id.* at 1530–31.

**B. Motion to Dismiss under Rule 12(b)(6) for Failure to State a Claim**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "All factual allegations are accepted as true, and all reasonable inferences are drawn in the plaintiff's favor." *Doria v. Royal Caribbean Cruises, Ltd.*, 393 F. Supp. 3d 1141, 1144 (S.D. Fla. 2019). A motion to dismiss only tests the sufficiency of the complaint and is not to be utilized to decide the merits of the case. *Tucker v. Blackfisk Marine, LLC*, 2023 WL 3191255, at *3 (S.D. Fla. Jan. 25, 2023).

**C. Motion to Strike Under Rule 12(f)**

A court may strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). In the Southern District of Florida, a motion to strike is "granted sparingly and generally disfavored by courts." *TracFone Wireless, Inc. v. Access Telecom, Inc.*, 642 F. Supp. 2d 1354, 1361 (S.D. Fla. 2009) (denying motion to strike and motion to dismiss).

## III. ARGUMENT

**A. The Court Should Deny Defendants' Rule 12(b)(1) Motion to Dismiss Count I because it Presents a Live, Redressable Controversy**

All Defendants argue that their amended Schedule 13D disclosures moot the FAC's Section 13(d) claim and deprive this Court of subject-matter jurisdiction under Rule 12(b)(1). Mot. at 7-10. Defendants then invoke that alleged mootness to argue that Scully lacks a redressable injury, and thus Article III standing, and ask the Court to decline to exercise supplemental

jurisdiction pursuant to 28 U.S.C. § 1367(c)(3) over Scully's state-law claims in Counts II to VII of the FAC. *Id.* at 11-12. Each argument fails because Count I presents a live, redressable controversy.

**1. Section 13(d) Requires Disclosure of Group Formation and Voting Accords**

Section 13(d) added by the Williams Act of 1968. Pub. L. No. 90-439, 82 Stat. 454. The Williams Act was intended to provide disclosure of accumulation of blocks of securities in public companies. *GAF Corp. v. Milstein*, 453 F.2d 709, 715-16 (2d Cir. 1971) (reversing dismissal of Section 13(d) claim). The Williams Act included requirements to disclose the formation of groups of "two or more persons" acting together for purposes of "holding" securities of an issuer, "the number of shares of such security which are beneficially owned," and their "contracts, arrangements, or understandings" in "the giving or withholding of proxies." Pub. L. No. 90-439, §13(d)(3), §13(d)(1)(D), (E), 82 Stat. 454, 454–455 (1968). The general purpose of Section 13(d) was "to provide the investor, the person who is required to make a decision, an opportunity to examine and to assess the relevant facts." *Piper v. Chris-Craft Indus., Inc.*, 430 U.S. 1, 27 (1977) (citation omitted). "The legislative history thus shows that Congress was intent upon regulating takeover bidders, theretofore operating covertly, in order to protect the shareholders of target companies." *Id.* at 28.

The relevant inquiry for group formation begins at § 78m(d)(3):

> "When two or more persons act as a partnership, limited partnership, syndicate, or other group for the purpose of acquiring, holding, or disposing of securities of an issuer, such syndicate or group shall be deemed a 'person' for the purposes of this subsection."

Those who coordinate to vote shares of an issuer are "persons act[ing] as a…group for the purpose of acquiring…securities of an issuer." *GAF Corp.*, 453 F.2d at 715-16 (in the corporate control context, "voting control of stock is the only relevant element of beneficial ownership.") (internal

citation omitted). In other words, Section 13(d)(3)'s reference to "acquiring" is not limited to only purchasing. *See id.* at 718 (legislative history and plain text "make it clear that the statute was primarily concerned with disclosure of potential changes in control resulting from new aggregations of stockholdings and was not intended to be restricted to only individual stockholders who made future purchases and whose actions were, therefore, more apparent.").

The reporting requirements under Section 13(d) are also triggered when two or more persons act as a group for the purpose of "holding" the securities of an issuer. "[A] group holding sufficient shares can effect a takeover without purchasing a single additional share of stock." *GAF Corp.*, 453 F.2d at 718. Under the plain text of the statute, agreements to vote shares in coordination trigger Section 13(d)(3) group formation and Section 13(d)(1) reporting requirements, because two or more persons enter into a group for the purpose of "acquiring" and/or "holding" shares of an issuer. 15 U.S.C. § 78m(d)(1), (3); *See Hemispherx Biopharma, Inc. v. Johannesburg Consol. Invs.*, 553 F.3d 1351, 1364 (11th Cir. 2008) ("the goal of section 13(d)(3) is to prevent persons who already have attained beneficial ownership of some amount of an issuer's securities from combining to control over five percent of a class of securities, yet ducking the reporting requirement in section 13(d)(1).").

Once group formation is triggered under Section 13(d)(3), the group is treated as a "person" under § 78m(d)(3), and that "person" is deemed to have beneficial ownership of shares held by individual group members for reporting purposes. *See GAF Corp.*, 453 F.2d at 716 ("The group would be deemed to have become the beneficial owner, directly or indirectly, of more than 10 percent of a class of securities at the time they agreed to act in concert…[and] would be required to file the information called for in section 13(d)(1) within 10 days [.]") (citation omitted). In addition, individual group members who agree to act in coordination are deemed to control the

shares of each other, and must also file revised statements of information under § 78m(d)(1). *See Hemispherx Biopharma, Inc.*, 553 F.3d at 1363. The Securities and Exchange Commission ("SEC") has also interpreted a Section 13(d)(3) "group" to encompass "two or more persons (who) *agree* to act together for the purpose of acquiring, holding, voting or disposing of equity securities of an issuer." Rule 13d-5(b)(1), 17 C.F.R. § 240.13d-5(b)(1)(i) (emphasis added).

Once a "person" is required to make disclosures under Section 13(d)(1), they must disclose: (1) the background and identity of the person who acquired the shares "and all other persons by whom or on whose behalf the purchases have been or are to be effected;" (2) "the source and amount of the funds...used or to be used in making the purchases;" (3) "if the purpose of the purchases...is to acquire control of the business...any plans or proposals...to liquidate such issuer, to sell its assets to or merge it with any other persons, or to make any other major change in its business or corporate structure;" (4) the number of shares owned and the number of shares the person has "a right to acquire, directly or indirectly," including those "by each associate of such person, giving the background, identity, residence, and citizenship of each such associate;" and (5) "information as to any contracts, arrangements, or understandings with any person" regarding the securities, "naming the persons with whom such contracts, arrangements, or understandings have been entered into, and giving the details thereof." 15 U.S.C. § 78m(d)(1)(A)-(E).

Separately, if a person has already filed a Section 13(d)(1) statement, they are required to amend that statement based on "any material change" in facts. 15 U.S.C. § 78m(d)(2). Because each shareholder who crosses the 5% ownership threshold of a publicly traded company must file an initial Schedule 13D under § 78m(d)(1), anytime a "material change" occurs to the information previously provided—including the development of "contracts, arrangements, or understandings with any person" related to "the giving or withholding of proxies," § 78m(d)(1)(E)—that

shareholder must amend the Schedule 13D. *See* § 78m(d)(2); *see also* 17 C.F.R. § 240.13d-2(a) (requiring any material changes to existing Schedule 13D filings be made "within two business days."). Material information includes "plans or proposals...which relate to…[a]ny change in the present board of directors or management of the issuer." 17 CFR § 240.13d-101.

**2. Courts Recognize Scully's Private Right of Action**

The Section 13(d) statute does not, by its terms, provide for a private right of action. However, the Eleventh Circuit has held that "under the Williams Act an issuer has a private right of action to seek the remedy of corrective disclosures" on Schedule 13D. *See Fla. Com. Banks v. Culverhouse*, 772 F.2d 1513, 1519 (11th Cir.1985); *see also GAF Corp.*, 453 F.2d at 719-20 ("the issuer has standing under section 13(d) to seek relief in the event of a false filing"); *Dan River Inc. v. Unitex Ltd.,* 624 F.2d 1216, 1224 (4th Cir. 1980); *Ind. Nat'l Corp. v. Rich,* 712 F.2d 1180, 1185-86 (7th Cir. 1983); *Chevron Corp. v. Pennzoil Co.,* 974 F.2d 1156, 1158 (9th Cir. 1992).

*Culverhouse* reasoned that Congress left intact the issuer rights of action that courts had "consistently and routinely" recognized before the 1977 amendments to the Williams Act, 772 F.2d at 1518, and that because shareholders cannot verify Schedule 13D filings and the SEC "simply cannot police every" acquisition, "it is necessary to grant this private right of action to issuers in order for the Williams Act to be effective[.]" *Id.* at 1519. Courts in this Circuit apply *Culverhouse* to provide an issuer standing to assert a Section 13(d) claim. *Aim Immunotech, Inc. v. Tudor*, 2023 WL 3975309, at *5-6 (M.D. Fla. Mar. 28, 2023) (report and recommendation).

*Liberty National*'s holding is not to the contrary. It held that an issuer cannot use Section 13(d) to force a shareholder to divest its shares, while observing that "the obvious antidote for an allegedly false filing is a corrected filing," the very remedy Scully seeks. *Liberty Nat'l Ins. Holding Co. v. Charter Co.*, 734 F.2d 545, 560, 565 (11th Cir. 1984); *see Culverhouse*, 772 F.2d

at 1516 (distinguishing *Liberty National* on that basis). Decided a year later, *Culverhouse* expressly distinguished *Liberty National* based on the remedy sought, rejected the argument that *Liberty National* was wrongly decided, and reaffirmed that the divestiture remedy at issue there "would be inconsistent with the purposes of the Williams Act." 772 F.2d at 1516, 1519-20. And *Hemispherx* left *Culverhouse* undisturbed, declining to reach the issue because no party raised it. 553 F.3d at 1361 n.14.

Scully seeks corrective disclosures, not divestiture or damages, and asks only that Defendants make those disclosures before voting their shares, much as the issuer in *Culverhouse* sought an injunction requiring corrective disclosures and barring a tender offeror "from proceeding further with the tender offer until such disclosures were made." *Culverhouse*, 772 F.2d at 1515, 1519-20. Scully's claim under Section 13(d) thus falls within the private right of action recognized in *Culverhouse* and does not seek the remedy rejected in *Liberty National*.

**3. Section 13(d)'s Plain Text Supports Count I as a Live, Redressable Claim**

Scully sufficiently pleads a Section 13(d) claim against Defendants under § 78m(d)(1), (2) and (3). First, the Milfam and Kellogg Defendants filed multiple Schedule 13D statements before the November 2025 contest, including on December 11, 2023 and July 25, 2022, respectively, and were required to amend those statements when they began coordinating the voting of their shares, which constituted a "material change" under § 78m(d)(2). Defendants voted their shares together by proxy in December 2025 to replace the members of Scully's Board–a "material change" to their prior Schedule 13D statements that they never disclosed, violating § 78m(d)(2) and its implementing regulations. *See* 17 C.F.R. §§ 240.13d-2(a), 240.13d-101; FAC ¶¶ 260, 265.

Second, Defendants formed a § 78m(d)(3) group before July 31, 2026: they met to coordinate voting at the purported 2025 meeting and throughout the ensuing contest, FAC ¶¶ 82-84, and by April 7, 2026 agreed to appoint their proposed slate of board nominees in place of

incumbent directors. *Id.* ¶¶ 85-89. Defendants were required to disclose this information within two days and have never done so. 17 C.F.R. § 240.13d-1(a), 240.13d-2(a); *see also* 17 C.F.R. § 240.13d-101. FAC ¶¶ 258-266.

**4. Defendants' Amended 13D Disclosures Do Not Moot Count I**

Defendants contend Count I is moot because they filed amended Schedule 13Ds announcing their intent to vote together to replace Scully's Board. Mot. at 7-10. This argument fails. "The party asserting mootness bears the 'heavy burden of persua[ding]' the court that the challenged conduct cannot reasonably be expected to start up again." *Aim Immunotech, Inc. v. Tudor*, 2025 WL 974057, at *2 (11th Cir. Apr. 1, 2025) (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000)). A case is moot *only when* it "no longer presents a live controversy with respect to which the court can give meaningful relief." *Al Najjar v. Ashcroft*, 273 F.3d 1330, 1336 (11th Cir. 2001) (citation omitted). Indeed, Defendants' own authority recognizes that a Rule 12(b)(1) dismissal is "extremely difficult" —a burden they cannot carry here. *Garcia v. Copenhaver, Bell & Assocs., M.D.'s, P.A.,* 104 F.3d 1256, 1260 (11th Cir. 1997) (reversing Rule 12(b)(1) dismissal).

*First*, the relief Count I seeks remains available and meaningful. Scully asks the Court to order Defendants "to furnish accurate disclosures under Section 13(d)…before Defendants can vote their shares at the Company's next shareholder meeting." FAC Prayer ¶ (b). Defendants' Schedule 13D amendments announce that the "Reporting group intends to vote together in favor of the MILFAM Nominees and against the current directors." *Id.* ¶¶ 112, 125–26. However, these amendments "said nothing about Milfam and Kellogg's prior coordination in the 2025 proxy contest," *Id.* ¶ 33. This omission prevents any given investor, "the person who is required to make

a decision, an opportunity to examine and to assess the relevant facts." *Piper*, 430 U.S. at 35–36 n.23 (discussing Williams Act's "intended beneficiaries").

Defendants contend that disclosing "the possibility of the alleged group and the parties' competing position" is sufficient to moot Count I. Defs.' Mot. at 9-10. But the FAC alleges that Defendants in fact voted shares together at the purported December 2025 meeting. FAC ¶ 18. Permitting them to simply allude to this litigation, deny group activity before July 31, 2026, and attempt another takeover of Scully is not consistent with a plain text reading of Section 13(d) and will deprive Scully's shareholders of material information necessary to inform whether to vote for Defendants' nominees. Taking the facts pled as true, the actions of the Defendants prior to the time they claim to have formed a group could materially influence shareholder decision-making vis-a-vis their obfuscation of group formation and intention to effect a change of control of Scully.

Moreover, the plain language of the statute has no forward-looking limit on the Schedule 13D reporting requirement. 15 U.S.C. § 78m(d)(1)(E) requires disclosure of "information as to any contracts, arrangements or understandings with any person with respect to the securities of the issuer" "*[i]f* any material change occurs in the facts set forth in the [disclosure] statement filed with the Commission." *Id.* § 78m(d)(2) (emphasis added). The statutory text does not limit Section 13(d)'s disclosure requirements to forward-looking disclosures, and Defendants cite no cases holding to the contrary. *Cf. E.ON AG v. Acciona, S.A.*, 468 F. Supp. 2d 537, 555 (S.D.N.Y. 2006) (denying motion to dismiss Section 13(d) claim as moot because it was "premature" to determine whether "Acciona has made sufficient curative disclosures" at that stage).

In *GAF*, an issuer sued a group of shareholders for Section 13(d) violations. 453 F.2d 709 at 712-13. Despite at least four Schedule 13D filings and the fact that the issuer's management prevailed in the proxy contest, the Second Circuit reversed an order dismissing the issuer's Section

13(d) claim. *Id.* at 714-15, 722. The Second Circuit noted that, on appeal, the defendants-appellees contended that the appeal should be dismissed as moot. The Second Circuit did not agree that the case was moot, and stated: "The complaint here alleges that past violations of section 13(d) are continuing and that the conspiracy to take over GAF 'continues unabated.' In the light of these allegations, we cannot say that the litigation has become mooted or that the cause for complaint has abated." *Id.* at 714, n.11.

In *Culverhouse*, the Eleventh Circuit reversed dismissal of a Section 13(d) claim, despite the fact that the lead defendant had filed a Schedule 13D and twelve amendments to it, allowing the issuer to seek corrective disclosures. 772 F.2d at 1514, 1519-20.

*Second*, Defendants' amendments cannot moot Count I simply because they say so. The amendments rest on a blanket denial that a group existed "immediately prior to" filing the amendment on July 31, 2026. FAC ¶¶ 33, 128. The FAC pleads contrary facts, and at the pleading stage, the Court must read the FAC "in the light most favorable to the plaintiff and accept all well-pled facts alleged in the complaint as true." *Scott v. Frankel*, 2013 WL 12080189, at *2 (S.D. Fla. June 20, 2013) (citation omitted).

For example, the FAC alleges that Kellogg voted his shares by proxy for Milfam's slate at the purported December 27, 2025 meeting; he told Scully's CEO that Subin had spoken with his "guys" in Raleigh; his CFO, David Pirrung, confirmed contacts with Milfam and that he would speak to them regarding a Board compromise; following the purported December 2025 AGM, Kellogg wrote that "Dave [Pirrung] can speak for us"; and, by April 7, 2026, Wichers and Kellogg agreed to place Milfam and Kellogg nominees on Scully's Board. *Id.* ¶¶ 18, 84-88. Whether these facts amount to group formation is a fact question inapt for resolution on a motion to dismiss.

Accepted as true, these allegations demonstrate Defendants' disclosures, including amendments, remain materially incomplete, presenting a "live controversy." *Al Najjar*, 273 F.3d at 1336.

*Third*, corrective disclosures are the remedy the Eleventh Circuit has endorsed for this identified harm. *Culverhouse*, 772 F.2d at 1519 ("[A]n issuer has a private right of action to seek the remedy of corrective disclosures" under the Williams Act and "is frequently in the best position to seek corrective disclosures within a time frame that will optimize the benefit to shareholders"). Other Circuits also recognize the propriety of corrective disclosures when a plaintiff alleges deficient Schedule 13D filings. *See, e.g., Dan River Inc.*, 624 F.2d at 1228 (reversing dismissal of a Section 13(d) claim and explaining that the key issue was "defendants' motive and intent in buying Dan River stock," and that "only defendants can clarify the confusion they have created on this point"); *see also GAF Corp.,* 453 F.2d at 719-20; *Indiana Nat'l Corp.,* 712 at 1185; *Chevron Corp.,* 974 F.2d at 1158. In Count I, Scully seeks this exact remedy: corrective disclosures.

*Fourth*, Defendants' cited authority is readily distinguishable. Start with *Aim Immunotech*. While true that the Section 13(d) claim was moot in that case, it was only because (1) a group member sold all of the issuer's stock he owned; (2) another group member affirmatively withdrew from the group; and (3) the stockholder meeting related to the dispute had already taken place. 2025 WL 974057, at *2. Similar temporal circumstances were present in *Nano Dimension Ltd. v. Murchinson Ltd.*, where the plaintiff sued only after the special meeting at which votes were cast, 102 F.4th 136, 143 (2d Cir. 2024), and in *Forte*, where suit was filed only after the annual shareholder meeting at which shares were voted. *Forte Biosciences, Inc. v. Camac Fund, LP*, 2024 WL 2946584, at *1 (N.D. Tex. June 11, 2024). Here, by contrast, Defendants unsuccessfully attempted a control vote in December 2025, Scully filed suit, Defendants quickly filed incomplete Schedule 13D amendments, and Scully filed the FAC well before the vote expected at the January

2027 EGM. And unlike in *Nano*, Defendants here have not disclosed the facts about their coordination; disclosing that a dispute exists between shareholders and the issuer does not satisfy Section 13(d)'s requirement to disclose "material objective factual matters." *Nano*, 102 F.4th at 141 (citation omitted);15 U.S.C. § 78m(d) (2) ("If any material change occurs in the facts set forth in the statement…an amendment shall be filed…."); *see also Meridian OHC Partners, LP v. Davis*, 2018 WL 1368266, at *5 (D. Nev. March 15, 2018) (denying motion to dismiss on mootness grounds because simply publicizing a dispute does not meet Section 13(d) disclosure requirements). Defendants' cursory disclosures on July 31, 2026 also do not demonstrate a genuine dispute of fact required under *Nano*. *See Nano Dimension Ltd. v. Murchinson Ltd.*, 681 F.Supp.3d 168, 186 (S.D.N.Y. 2023) (finding genuine dispute where "200 documentary exhibits" had been introduced into the record). Nor did *Nano* involve a control dispute–to the contrary, in that case, only two of seven board seats were at issue. 102 F.4th at 143 (holding an injunction negating votes cast by disputed shares is not available "where corrective disclosures have been made *and* the vote in question did not effect a change in control over the issue") (emphasis added). Finally, *Taro* arose under a different statutory provision—Section 14 of the Exchange Act, *Taro Pharm. Indus., Ltd. v. Sun Pharm Indus., Ltd.*, 2010 WL 2835548, at *1 (S.D.N.Y. July 13, 2010), and *Avnet* concerned the legal question of a shareholder as an unregistered investment company, not a disclosure of group formation potentially affecting company control. *Avnet, Inc. v. Scope Indus.*, 499 F. Supp. 1121, 1122 (S.D.N.Y. 1980).

*Liberty National* and *Rondeau* fare no better. The holding in *Liberty National* is irrelevant; there the Court held that there was no cause of action under Section 13(d) to "expel an unwanted shareholder from the company," a remedy Scully does not seek here. 734 F.2d at 560, 567. Instead, consistent with Eleventh Circuit law and as defendants acknowledge, "the obvious

antidote for an allegedly false filing is a corrected filing." *Id.* at 565. And finally, the *Rondeau* Court acknowledged "[p]etitioner has not attempted to obtain control of respondent, either by a cash tender offer or any other device." *Rondeau v. Mosinee Paper Corp.*, 422 U.S. 49, 58 (1975). What's more, the lack of "cognizable danger of recurrent violation" was significant to the Court's reasoning that injunctive relief was inappropriate. *Id.* (citation omitted). In contrast, the danger is easily cognizable here: an uninformed shareholder vote.

Scully and its shareholders still do not know when the Kellogg Group joined with the Milfam Group, or the details of their "contracts, arrangements, or understandings" from November 2025 through July 30, 2026. FAC ¶¶ 82-89, 108-110, 112. Defendants' July 31, 2026 filings are materially misleading because they deny prior group formation and disclose nothing about their prior coordination including voting by proxy. *Id.* ¶¶ 127-128. That information is material to a future vote on Defendants' nominees. *Id.* ¶ 266.

**5. Count I is Not Moot and Scully has Standing**

Defendants standing argument – that Scully lacks a redressable injury because the amendments purportedly moot Count I – fails for the same reasons. Mot. at 10-11. Courts have issued injunctive relief when statements contained in Schedule 13D filings are incomplete. *See, e.g., K-N Energy, Inc. v. Gulf Interstate Co.*, 607 F. Supp. 756, 771 (D. Colo. 1983) (enjoining "members of the filing group" from "soliciting any proxy" until "a true and correct Schedule 13D is filed," notwithstanding defendants' January 7, 1983 amendment); *see also E.ON*, 468 F. Supp. 2d at 555, 558 (denying motion to dismiss based on mootness because "[b]ased on the current record in this case, it is premature to find that Acciona has made sufficient curative disclosures to fulfill the requirements of Section 13(d)," and finding "Amendment No. 1 did not disclose all of Acciona's arrangements and understandings with Santander.")

**6. The Court Should Retain Supplemental Jurisdiction over Scully's State Law Claims Because Count I is Not Moot**

Defendants' challenge to supplemental jurisdiction collapses with their mootness argument. Their sole basis for dismissing Counts II–VII is that Count I is moot and Scully lacks Article III standing. Mot. at 11–12. Yet Count I remains live and redressable, and Scully has standing to pursue it. The Court should retain jurisdiction over Counts II–VII.

**B. The Court Should Deny the Rule 12(b)(6) Motion to Dismiss Count I because the FAC Includes Adequate Allegations Regarding the Kellogg Group**

The Kellogg Group moves to dismiss Count I under Rule 12(b)(6), arguing it is a "shotgun" pleading as to them. Mot. at 12-15. But the FAC gives each of them fair notice and pleads specific ownership, control, voting, and communication facts supporting a plausible inference that each was part of the undisclosed group.

**1. The FAC Gives Each Defendant Notice of Count I.**

Notice is critical to a shotgun pleading inquiry. *Cont'l 332 Fund, LLC v. Albertelli*, 317 F. Supp. 3d 1124, 1138 (M.D. Fla. 2018). Defendants do not claim that they cannot understand Count I, which defeats their argument. *Doe v. Carnival Corp.*, 470 F. Supp. 3d 1317, 1323 (S.D. Fla. 2020) (declining to dismiss on "shotgun pleading grounds" where the defendant demonstrated its understanding of the claims); *see also Weiland v. Palm Beach Cnty. Sherriff's Off.*, 792 F.3d 1313, 1325 (11th Cir. 2015) (no shotgun pleading if complaint "adequately put[s] [defendants] on notice of the specific claims against them and the factual allegations that support those claims.").

**2. The FAC Ties All Four Defendants to the Alleged Group.**

Defendants suggest these four are not sufficiently tied to Scully's Section 13(d) claim. Mot. at 12-14. But the FAC alleges their ownership, control, and shareholding relationships:

- **C. Kellogg:** He beneficially owns about 23% of Scully's voting power and wholly owns Goose Creek. FAC ¶¶ 39-40. Peter Kellogg holds his 35% stake "along with his son, Charles Kellogg, and their affiliated entity, IAT [Reinsurance Co. Ltd.]." *Id.* ¶ 81.
- **IAT:** It is a wholly owned subsidiary of IAT Reinsurance Co. Ltd., is controlled by Peter Kellogg, and holds Scully shares through Harco. *Id.* ¶ 37.
- **Goose Creek:** It is wholly owned by C. Kellogg and controlled by Peter Kellogg, holds Scully shares, and owns IAT. *Id.* ¶ 40.
- **Harco:** It is controlled by Peter Kellogg, holds Scully shares, and is a wholly owned subsidiary of IAT. *Id.* ¶ 41.

The voting allegations reinforce these ties. Milfam and Kellogg voted by proxy for Milfam's slate in December 2025. FAC ¶ 18. Milfam claimed that about 59% of Scully's shares voted, though it owned only about 13%. FAC ¶ 24. This supports the inference that the additional votes came from the Kellogg Group, including these four Defendants.

Defendants' own Schedule 13D amendments, referenced in the FAC and attached to the Motion, further support that inference by disclosing a longstanding "oral agreement among Peter Kellogg and his family members, including Charles Kellogg, and the family owned entities" giving Peter Kellogg "the exclusive right to make all decisions related to the voting, holding, acquiring or disposing of the Shares." ECF No. 29-2 at 14. That agreement falls squarely within the regulation's language: an agreement "[t]o act together for the purpose of…holding, voting, or disposing" of Scully stock. 17 C.F.R. § 240.13d-5(b)(1)(i).

The FAC's allegations about David Pirrung further connect these four Defendants to the group. The FAC alleges that Pirrung is IAT's Chief Financial Officer, "reports directly to Peter Kellogg and Charles Kellogg," and attended multiple meetings with Milfam and its nominees

during the contest. FAC ¶ 82. Peter Kellogg wrote that "Dave can speak for us," *id.* ¶ 86, and by April 7, 2026, agreed with Milfam to seat Kellogg nominees, including Pirrung, on Scully's Board, *id.* ¶ 88. These allegations support the inference that Pirrung spoke for the Kellogg Group, including these four Defendants.

The July 31, 2026 Schedule 13D amendment reinforces that inference: the entire "Reporting Group," including these four Defendants, "intends to vote together in favor of the MILFAM Nominees." FAC ¶¶ 125-26. Pirrung signed both amendments for these Defendants as signatory for Goose Creek, IAT, and Harco in July, and as CFO of IAT and Goose Creek, President of Harco, and "Attorney In Fact" for Charles Kellogg in September. *See* ECF 23-2 at 10-11, ECF 29-2 at 15.[1]

**3. Defendants' Authorities Do Not Support Dismissal.**

*Mann v. Palmer*, 713 F.3d 1306, 1308-14 (11th Cir. 2013), concerned a death-row challenge to lethal injection and was decided on the basis of timeliness and *res judicata*. In *Weiland,* 792 F.3d at 1325-26, the Eleventh Circuit reversed dismissal on shotgun-pleading grounds, explaining that dismissal is proper where it is "virtually impossible" to determine which facts support which claim. *United States v. Bestfoods*, 524 U.S. 51 (1998), concerns veil piercing, which is irrelevant to Scully's claim that each Defendant violated Section 13(d).

**C. The Court Should Deny Defendants' Rule 12(f) Motion to Strike because the FAC Points to Relevant, Public Matters**

All Defendants move under Rule 12(f) to strike FAC ¶¶ 9, 67, 95, 99–101, 114, and 118–119. Mot. at 15–18. In this District, such motions are considered a "drastic remedy" disfavored by the courts, *Ray v. Adams & Assocs., Inc.*, 599 F. Supp. 3d 1250, 1258-59 (S.D. Fla. 2022)

[1] *See Patagonia, Inc. v. Worn Out, LLC*, 2023 WL 3172530, at *5 (S.D. Fla. May 1, 2023) (taking judicial notice of administrative agency's public files).

(citation omitted), and are "usually…denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties." *TracFone*, 642 F. Supp. 2d at 1361 (citation omitted). Defendants' own authority agrees that striking "should be sparingly used." *Augustus v. Bd. of Pub. Instruction of Escambia Cnty.*, 306 F.2d 862, 868 (5th Cir. 1962) (reversing district court order striking pleadings) (citation omitted). The challenged allegations about a public SEC order against Kellogg for Section 13(d) violations and Kellogg's public filings for another issuer are relevant to Defendants' knowledge of disclosure obligations and their strategy of launching control contests without prior disclosure. Defendants' evidentiary authorities are inapposite. Admissibility is not at issue in a motion on the pleadings. Finally, the motion to strike does not include the required certificate that counsel met and conferred before filing. S.D. Fla. L.R. 7.1(a)(3). This Court has discretion to deny the motion to strike on this ground. *Id.*

## IV. CONCLUSION

Plaintiff Scully Royalty Ltd. respectfully requests that the Court deny Defendants' Motion to Dismiss and Motion to Strike.

Dated: October 27, 2026

Respectfully submitted,

s/ *Martin B. Goldberg*

Martin B. Goldberg
Florida Bar No. 827029
mgoldberg@lashgoldberg.com
Benjamin R. Shiekman
Florida Bar No. 113114
bshiekman@lashgoldberg.com
LASH GOLDBERG FINEBERG LLP
Miami Tower
100 Southeast 2nd Street, Suite 1200
Miami, FL 33131-2158
Telephone: (305) 347-4040
Facsimile: (305) 347-4050

LATHAM & WATKINS LLP
Colleen C. Smith (*admitted pro hac vice*)
12670 High Bluff Drive
San Diego, CA 92130-3086
Telephone: (858) 523-5400
Facsimile: (858) 523-5450
Colleen.Smith@lw.com

John J. Barber (*admitted pro hac vice*)
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
Facsimile: (312) 993-9767
Jack.Barber@lw.com

Jordan Davisson Cook (*admitted pro hac vice*)
650 Town Center Drive
20th Floor
Costa Mesa, CA 92626-1925
Telephone: (714) 755-8238
Facsimile: (714) 755-8290
Jordan.Cook@lw.com

*Attorneys for Plaintiff Scully Royalty Ltd.*