**IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA FORT PIERCE DIVISION**

SCULLY ROYALTY LTD.,

Plaintiff,

v.

IAT REINSURANCE CO. LTD., IAT INSURANCE GROUP, INC., PETER KELLOGG, CHARLES KELLOGG, GOOSE CREEK CAPITAL, INC., HARCO NATIONAL INSURANCE COMPANY, MILFAM LLC, NEIL SUBIN, SKYLER WICHERS, ALAN HOWE & MARK HOLLIDAY,

Defendants.
_______________________________________/

Case No.: 2:26-cv-14257-AMC

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS AND MOTION TO STRIKE (ECF No. 23)**

Scully's Opposition (ECF No. 40) confirms that its claim is built on a fundamentally incorrect view of the law: that Section 13(d) requires Defendants to admit Scully's account of alleged past coordination or continue litigating that historical dispute until judgment. That position has been consistently rejected by long-standing authorities, as cited in Defendants' Motion to Dismiss ("Motion"). Defendants' July 31, 2026 Schedule 13Ds (ECF No. 29) sufficiently disclose all required information. Count I of the First Amended Complaint ("FAC") is moot.

Count I also fails as to Charles Kellogg, IAT Insurance Group, Goose Creek Capital, and Harco National Insurance because the FAC pleads no facts showing that any of them agreed with MILFAM to act as a group, and Scully's four "inferences" cannot substitute defendant-specific allegations. Finally, the Court should strike the FAC's references to unrelated, historical issues,

which are immaterial to a claim seeking only corrective disclosure and which Scully defends with nothing more than improper propensity reasoning.

## I. Section 13(d) Authority Firmly Establishes that Scully's Sole Federal Claim is Moot.

The Opposition identifies no material informational deficiency that remains remediable under Section 13(d)—a disclosure statute. Once the required information is included in a Schedule 13D filing, an issuer's Section 13(d) claim is moot. And when the information at issue involves a genuine dispute about formation of a group, the only requirement is disclosure of the parties' respective positions.

Defendants' amended Schedule 13Ds did just that. Defendants disclosed that Plaintiff filed this lawsuit and described the central allegations, including that Defendants had been acting as a group since November 2025, that its purpose has been to help MILFAM's director nominees obtain control of Scully, and that formation of the group was further revealed by later events including multiple meetings and discussions between the CFO of an IAT subsidiary and MILFAM from December 2025 into 2026. Defendants expressly denied these allegations. Defendants have also disclosed the additional fact that they are currently operating as a group and that they intend to vote together in favor of MILFAM's nominees at an upcoming shareholder meeting. <u>None of this is disputed</u>.

The authorities cited in the Motion clearly establish that these disclosures are sufficient to moot Plaintiff's claims. The Opposition provides no support for Plaintiff's continued pleas that more is required. The statute does not permit management of an issuer to intimidate its shareholders (who in this case hold a near-majority of all outstanding shares, and who are very likely to possess a majority of voting shares at any meeting) into admitting an (incorrect) version of the past, when shareholders have all the material information needed to act in an informed manner. The Court should grant the Motion on mootness and standing grounds.

### A. Defendants Have Disclosed All Information Required Under Section 13(d).

Section 13(d) is "an informational tool" whose "overall purpose is to 'prevent persons who already have attained beneficial ownership of some amount of an issuer's securities from combining to control over five percent of a class of securities, yet ducking the reporting requirement.'" *See* Order Denying Plaintiff's Motion for Expedited Discovery (ECF No. 39) (Oct. 27, 2026) (the "Discovery Order") at 12 (quoting *Hemispherx Biopharma, Inc. v. Johannesburg Consol. Invs.*, 553 F.3d 1351, 1364 (11th Cir. 2008)). Shareholders subject to the reporting requirement must disclose their holdings, their intent, and if they are acting with others as a group. 15 U.S.C. § 78m(d); *see also* FAC ¶ 259 (asserting that under Section 13(d) "investors acting as a group for the purpose of acquiring, holding, or voting the stock of an issuer must disclose the group's existence and make plain their intentions"). Defendants have done all those things.

Defendants also have disclosed in amended Schedule 13Ds Plaintiff's contention that Defendants formed a group earlier. Far from "simply allud[ing] to this litigation," the July 2026 Schedule 13Ds identified this lawsuit, described the Plaintiff's position and allegations, and denied that a group was formed prior to July 31, 2026. *See* ECF Nos. 29-1 at 28, 29-2 at 11–13. An issuer's Section 13(d) lawsuit is rendered moot by such a disclosure, as a long line of authorities have held. *See* Mot. 8–10.[1]

The Opposition reveals the weakness of Plaintiff's position by not refuting any of these precedents and instead contending only that the cases cited by Defendants each involved somewhat different facts on matters *completely immaterial* to the courts' holdings. *See* Opp. at 14–15. For

[1] Moreover, as the Court noted in its Discovery Order, the facts are all well known to shareholders. *See* Discovery Order at 10 ("[T]he shareholder drama leading up to the December 2025 proxy contest and afterward . . . has been publicly aired through a host of public SEC filings, the Cayman litigation, and now this case."). Plaintiffs cannot continue to pursue harassing litigation merely because Defendants do not agree to admit to Plaintiff's (mistaken) view of historical facts.

example, the Opposition notes that the suits in *Nano Dimension Ltd. v. Murchinson Ltd.*, 102 F.4th 136 (2d Cir. 2024), and *Forte Biosciences, Inc. v. Camac Fund, LP*, No. 23-cv-2399, 2024 WL 2946584 (N.D. Tex. June 11, 2024), were filed after a shareholder meeting was held—a fact that had nothing to do with either court's mootness holding.[2] The Opposition tries to sidestep *Avnet, Inc. v. Scope Indus.*, 499 F. Supp. 1121 (S.D.N.Y. 1980), because it did not allege group activity. But this foundational case squarely rejected Plaintiff's central (incorrect) premise that "accurate disclosure requires nothing short of a statement" acceding to the issuer's view of the facts. *Id.* at 1124–25 ("When, as here, the record demonstrates that there is a dispute as to the facts, the law requires only that the disputed facts and the possible outcomes be disclosed."). Similarly, the Opposition tries to diminish *Taro Pharm. Indus., Ltd. v. Sun Pharm. Indus., Ltd.*, No. 09-cv-8262, 2010 WL 2835548 (S.D.N.Y. July 13, 2010), because it involved a Section 14 claim, but Plaintiff ignores that the court nonetheless noted "the general rule" that amended disclosures moot a Section 13(d) claim when holding that "this same logic" applies to Section 14. *Id.* at *10.

*Nano* is directly on point. The issuer alleged an undisclosed group, the defendants amended their filings to disclose and deny the allegations, and the Second Circuit held that sufficient because Section 13(d) is not a "rite of confession" and "the law requires only that the disputed facts and the possible outcomes be disclosed." *Nano Dimension Ltd.*, 102 F.4th at 141 (quotation omitted). The court rejected the argument Scully makes here: that a finding of mootness would equate to "making a factual finding at the motion-to-dismiss stage," explaining instead that "Defendants' amended Schedule 13Ds satisfied Section 13(d)'s disclosure requirements because they detailed Nano's claims and Defendants' responses, allowing 'members of the public the opportunity to

---

[2] Plaintiff also tries to distinguish *Nano* because the vote there did not involve control of the full board, a fact that was similarly immaterial to the holding.

assess the information themselves.'" *Id.*; *see also Forte*, 2024 WL 2946584, *3 ("[D]isclosing [the issuer's] contentions while continuing to dispute them is sufficient disclosure.").

The Opposition's cases on mootness miss the central point that Section 13(d) does not allow a company to press its claims until defendant-shareholders admit to a plaintiff's view of the facts. None of Plaintiff's cases addressed whether an amended Schedule 13D that disclosed the litigation and described the parties' positions mooted the claim. *See Fla. Com. Banks v. Culverhouse*, 772 F.2d 1513 (11th Cir. 1985) (not addressing whether any of the "twelve amendments" made there disclosed the lawsuit and its allegations); *GAF Corp. v. Milstein*, 453 F.2d 709, 714 n.11 (2d Cir. 1971) (mootness argument premised on the fact that the proxy contest had supposedly ended, which the court rejected because takeover efforts continued unabated); *E.ON AG v. Acciona, S.A.*, 468 F. Supp. 2d 537, 555, 558 (S.D.N.Y. 2006) (involving continuing omissions concerning financing arrangements and intentions); *see also Nano Dimension Ltd. v. Murchinson Ltd.*, 681 F. Supp. 3d 168, 188 (S.D.N.Y. 2023) (distinguishing and rejecting reliance on *E.ON*), *aff'd*, 102 F.4th 136 (2d Cir. 2024).

In glaring contrast to the line of authorities cited by Defendants and unrefuted by Plaintiff, the Opposition's demand for more disclosure lacks *any* supporting authority. Defendants' July 2026 Schedule 13Ds include all information needed to moot Count I.

**B. Shareholders Are Not Deprived of Any Information Necessary to Vote.**

The Opposition also does not explain why or how shareholders need an amended Schedule 13D to reflect allegedly omitted (historical) information. As the Court has recognized, none of the items Plaintiff harps on "move[s] the ball" or "change[s] the fundamental 'information' known to shareholders." Discovery Order at 11–12. To the contrary, the central information to which shareholders are entitled is disclosed: "(1) the Milfam and Kellogg parties have declared

themselves to be working together for Section 13(d) purposes in connection with the upcoming meeting and (2) back in early December 2025 (before the 'hallway meeting'), representatives of Kellogg and Milfam were in conversations regarding Scully's management and 'support for the election of MILFAM's nominees . . . as directors of the Corporation.'" *Id.* at 10 (citations omitted); *see also id.* at 11 ("Whether Milfam and Kellogg initiated communications one month earlier in November 2025, or whether they reached 'group' status for disclosure purposes under Section 13(d) at some earlier point in 2025 [or 2026], does not change the fundamental 'information' known to shareholders now regarding coordination between the Milfam and Kellogg camps.").

Even after a lengthy hearing on Scully's failed expedited discovery request, the Court noted it was "left with no clear understanding of how the information sought in the expedited discovery materially adds to the mix of information already in the public domain regarding the Scully-Milfam dispute and the now-disclosed fact of Section 13(d) 'group' coordination between Milfam and Kellogg." *Id.* at 9. The same is true of the FAC, and the Opposition does not fill that gap.

The Opposition also misconstrues Defendants' position about Section 13(d) being forward-looking. The statute is designed to ensure that shareholders have material information moving forward. Once disclosure is made, there is no longer a remedy. A Section 13(d) action may not be maintained merely to litigate whether an issuer is correct as to purely historical questions.

### C. The Allegedly Omitted Information Does Not Support Existence of a Group.

The Opposition also tries to distinguish *Nano* on the basis that this matter does not involve "a genuine dispute of fact" as to group formation. *See* Opp. at 15. That strained argument fails here, where Scully raised similar Section 13(d) arguments in the Cayman Islands litigation and obtained discovery on it. Plaintiff thereafter abandoned the Section 13(d) arguments there.[3]

[3] To be sure, this case is moot not because Defendants are correct about formation of the group; it is moot because the amended Schedule 13D filings provide shareholders with the required

Additionally, Plaintiff's allegations amount to items that the SEC has explicitly and clearly determined do *not* constitute group activity:

> Question: Would a conversation, email, phone contact, or meetings between a shareholder and an activist investor that is seeking support for its proposals to an issuer's board or management, without more, such as consenting or committing to a course of action, constitute such coordination as would result in the shareholder and activist being deemed to form a group?
>
> Response: No. Communications such as the types described, alone and without more, would not be sufficient to satisfy the "act as a . . . group" standard in sections 13(d)(3) and 13(g)(3) as they are merely the exchange of views among shareholders about the issuer. This view is consistent with the Commission's previous statement that a shareholder who is a passive recipient of proxy soliciting activities, without more, would not be deemed a member of a group with persons conducting the solicitation. Activities that extend beyond these types of communications, which include joint or coordinated publication of soliciting materials with an activist investor might, however, be indicative of group formation, depending upon the facts and circumstances. . . . .
>
> Question: Would an announcement or a communication by a shareholder of the shareholder's intention to vote in favor of an unaffiliated activist investor's director nominees, without more, constitute coordination sufficient to find that the shareholder and the activist investor formed a group?
>
> Response: No. We do not view a shareholder's independently-determined act of exercising its voting rights, and any announcements or communications regarding its voting decision, without more, as indicia of group formation. This view is consistent with our general approach towards the exercise of the right of suffrage by a shareholder in other areas of the Federal securities laws. [. . .]

*See* Modernization of Beneficial Ownership Reporting, SEC Rel. No. 34-98704, at *136–37 (Oct. 10, 2023) (footnotes omitted), https://www.sec.gov/files/rules/final/2023/33-11253.pdf.

The Opposition also advances an additional novel and unsupported theory: that, in a proxy contest, one shareholder's receipt of "yes" votes from other shareholders forms a group with all such shareholders and needs to be disclosed as a "material change." Opp. at 10. Not so. Returning

---

information including as to the existence and nature of this dispute. Similarly, Plaintiff is incorrect that disputes about whether alleged facts "amount to group formation is a fact question inapt for resolution on a motion to dismiss," Opp. at 13, as deciding whether allegations state a claim for relief is the *sine qua non* of a Rule 12(b)(6) motion.

a proxy in support of an activist shareholder's slate does not, without more, form a group or require an updated Schedule 13D. The same is true of a vote for management's slate. Were the rule otherwise, every shareholder who returned a proxy voting for any proposal would need to file an amended Schedule 13D identifying every other shareholder who voted the same way—information not every shareholder would have. Plaintiff advances no authority to support such an untenable position, which also conflicts with the above-quoted SEC guidance.

*  *  *

As one of Plaintiff's own authorities explains:

> ***Congress did not intend to create a weapon for management to discourage takeover bids or prevent large accumulations of stock which would create the potential for such attempts***. By requiring the disclosure of information to the target corporation as well as to the SEC, Congress intended to do no more than give incumbent management a chance to explain its position. [. . .] ***[T]his Court does not intend to allow the directors of corporations, who clearly have an economic interest in protecting their own positions, to use corporate resources simply to harass and burden aggressive outsiders***.

*Culverhouse*, 772 F.2d at 1518–19 (citations omitted) (emphasis added). Plaintiff's claim is moot. The Court should dismiss the FAC and end this harassment of Scully's near-majority shareholders.

## II. Count I Should Also Be Dismissed as to Certain Kellogg Defendants Because the FAC Fails to Allege They Agreed with MILFAM to Act as a Group.

Charles Kellogg, IAT Insurance Group, Goose Creek Capital, and Harco National Insurance additionally moved to dismiss Count I under Rule 12(b)(6) because the FAC fails to allege any agreement involving them. In response, Scully offers four "inference[s]": (1) the percentage of shares voted; (2) that David Pirrung "spoke for" them; (3) a family "oral agreement" described in a Schedule 13D amendment; and (4) the July 31, 2026 amendment. Opp. at 17–19.

As explained in the Motion, a complaint that asserts claims "against multiple defendants without specifying which of the defendants are responsible for which acts or omissions" does not satisfy Rule 8. *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015).

Scully must plead what each defendant did "through [its] own . . . actions," *Iqbal*, 556 U.S. at 676, and, because the claim turns on an alleged agreement, facts "suggest[ing] that an agreement was made" by each defendant. *Twombly*, 550 U.S. at 556. None of Scully's four "inferences" does so.

*First*, the only voting allegation names MILFAM and Peter Kellogg, not any of the four moving Defendants, FAC ¶ 18, and parallel voting is insufficient in any event. 550 U.S. at 556–57. *Second*, every allegation about Pirrung says he acted "on behalf of Kellogg," meaning Peter, FAC ¶¶ 82, 84–86, and his 2026 signatures on amendments disclosing a go-forward group cannot evidence an earlier, undisclosed one. *Third*, the family "oral agreement" is not alleged in the FAC, and Scully cannot amend through its brief. *Cf. Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004). In any event, a disclosed intra-family arrangement says nothing about an agreement with MILFAM. *Fourth*, the July 31 amendment discloses a group formed "on a go-forward basis" and expressly denies any earlier one. FAC ¶¶ 32–33. Treating compliance with Section 13(d) as proof of a prior violation would turn the statute on its head.

Scully's fallback—that the Kellogg Defendants have not claimed they "cannot understand Count I," Opp. at 17—misses the point; the question is plausibility as to each defendant, not notice. *Iqbal*, 556 U.S. at 678. And the five paragraphs Scully says "tie[]" these Defendants to the claim allege only that they hold Scully shares. Opp. at 17–18 (citing FAC ¶¶ 37, 39, 40, 41, 81). Scully's only answer to *Bestfoods*—that it concerns veil piercing, Opp. at 19—proves the point: Scully seeks to attribute Peter Kellogg's alleged conduct to his son and affiliates based on family ties and ownership alone. Finally, Scully ignores significant portions of the Motion, Mot. at 14–15, including by offering no response on the absence of any independent disclosure obligation. Plaintiff has thus conceded those points. *See Jones v. Bank of Am., N.A.*, 564 F. App'x 432, 434 (11th Cir. 2014).

## III. The Court Should Strike the FAC's Prejudicial References to Immaterial Conduct.

Scully offers no legitimate procedural or substantive reason to keep the nine paragraphs of the FAC that recount unrelated, decade-old matters involving Peter Kellogg, and the Court should strike them. Scully's conferral objection fails because on October 7, 2026, the parties conferred via Zoom regarding Defendants' then-forthcoming Rule 12 motion. Scully objects that no certificate was included in the Motion but does not contend that the parties failed to confer, and it concedes that denial on that ground is discretionary. Opp. at 20. When Scully raised this issue to Defendants mere hours before its response deadline, Defendants offered to confer further. Scully has not followed up, and its brief confirms that further conferral would be fruitless. In any event, Rule 12 permits the Court to strike on its own. *See* Fed. R. Civ. P. 12(f)(1).

On the merits, Scully's theories of relevance only confirm that the allegations do not belong in this case. *First*, Count I seeks only corrective disclosure, and Scully identifies no element to which Peter Kellogg's decade-old "knowledge of disclosure obligations" is relevant. Opp. at 20. *Second*, a "strategy of launching control contests without prior disclosure," *id.*, is a propensity inference by another name. Further, neither matter involved a control contest, Scully, or MILFAM. *See* FAC ¶¶ 9, 67, 95, 99–101, 114, 118–119; Mot. at 15–16.

Scully's contention that "[a]dmissibility is not at issue," Opp. at 20, does not advance its position; courts often strike propensity matter from pleadings. *See Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893–94 (2d Cir. 1976). Further, that the allegations deal with "public" matters, Opp. at 20, does not negate their prejudicial effect. Rule 12(f) contains no exception for matters appearing elsewhere in the public record. Defendants' requested remedy is narrow: the Court should strike the nine offending paragraphs from Scully's 315-paragraph FAC.

## CONCLUSION

For the reasons stated above and in the Motion, the Court should dismiss the FAC.

Respectfully submitted this 3rd day of November, 2026.

**BAKER & McKENZIE LLP**

By: */s/ William V. Roppolo*
William V. Roppolo, Esq.
Florida Bar No. 182850
william.roppolo@bakermckenzie.com
Christina M.E. Dines, Esq.
Florida Bar No. 1008502
christina.dines@bakermckenzie.com
Annasofia A. Roig, Esq.
Florida Bar No. 1018149
annasofia.roig@bakermckenzie.com
830 Brickell Plaza, Suite 3100
Miami, Florida 33131
Telephone: (305) 789-8900
Facsimile: (305) 789-8953

*Attorneys for Kellogg Defendants*

**K&L GATES LLP**

*/s/ Jonathan B. Morton*
Jonathan B. Morton, Esq.
Florida Bar No. 956872
Jonathan.Morton@klgates.com
Michelle Komisarchik
Florida Bar No. 1070480
Michelle.Komisarchik@klgates.com
One Biscayne Tower
2 S. Biscayne Blvd., Suite 1900
Miami, Florida 33131-2399
Telephone: (305) 539-3300
Facsimile: (305) 358-7095

Stephen G. Topetzes
stephen.topetzes@klgates.com
1601 K Street, NW
Washington, DC 20006
Telephone: (202) 778-9328
Facsimile: (202) 778-9100
*Admitted Pro Hac Vice*

John A. Bicks
john.bicks@klgates.com
599 Lexington Avenue
New York, NY 10022-6030
Telephone: (212) 536-3906
Facsimile: (212) 536-3901
*Admitted Pro Hac Vice*

*Attorneys for MILFAM Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 3rd day of November, 2026, this Reply Memorandum in Support of Defendants' Motion to Dismiss was filed using the Court's CM/ECF electronic notification system and served on all counsel of record.

*/s/ Jonathan B. Morton*